389 So.2d 1263 (1980)
STATE of Louisiana
v.
Charles R. DOUGLAS.
No. 67134.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
*1264 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, W. C. Douglas Friederichsen, Asst. Dist. Attys., for plaintiff-appellee.
Jack Quarles, Indigent Defender Program, Gretna, Thomas M. Gereighty, New Orleans, for defendant-appellant.
LEMMON, Justice.
Defendant was convicted of the armed robbery of Henry Murphy and was sentenced to serve a term of imprisonment for 99 years at hard labor without benefit of parole, probation, or suspension of sentence.
The robbery occurred at Murphy's house, a rented room located at 1402 Pailet Street in Harvey, Louisiana. When Murphy responded *1265 to a knock at his door, an unidentified person called out that he thought he had run into Murphy's automobile. Murphy opened the door and was confronted by an armed man, who pushed a pistol into Murphy's stomach and entered the house. The robber ordered Murphy to give him his money, and Murphy handed over his wallet containing about $1,100 in cash. As the robber fled, he left with a parting admonition: "If you come out, you're dead."
Murphy gave the police a detailed description of the robber and the details of the robbery. Two days later Murphy picked out defendant from an array of photographs as the person who robbed him. Murphy again positively identified defendant at trial as the perpetrator of the robbery.
On appeal defendant's principal contention is that the trial court abused its discretion in imposing the maximum sentence, also arguing the separate but related contention that the trial court failed to comply with the sentencing procedure required by C.Cr.P. art. 894.1. He also contests rulings on suppression of identification and request for mistrial.
Photographic Identification Procedure
Defendant contends that the trial court erred in denying his motion to suppress the pretrial identification by the victim at the photographic line-up. He argues that the identification procedure was so suggestive as to create a substantial risk of misidentification because he was portrayed as wearing a jacket in the photograph after the officers knew that the perpetrator had worn a jacket. Defendant further urgues that, after he had been identified from the five pictures, the officers improperly showed the victim a police photograph (mug shot) to confirm the identification. The state responds that the identification procedure was proper and not suggestive.
The photographic display used in the pretrial identification consisted of five color photographs of the head and shoulders of individuals who were similar in sex, race, age and general physical characteristics. Two of the subjects wore what appeared to be black jackets. Defendant contends that since the robber was described as wearing a jacket, he was prejudiced by the victim's being shown his photograph in a jacket.
At the motion to suppress the investigating officer testified that the victim indicated the robber wore a blue-jean jacket. At trial the victim indicated that the robber possibly wore a blue-jean jacket during the robbery, but was wearing a camel tan coat when the victim saw him on the day after the robbery. Thus, while the witness was uncertain whether the robber wore a blue-jean jacket or tan vinyl jacket, it is clear that the perpetrator was not wearing a black jacket similar to the one defendant was wearing in the photograph.
Inasmuch as the photograph of defendant depicted him wearing clothes different from the robber, the possibility of suggestiveness is minimal. Additionally, one of the other photographs depicted a subject wearing a dark jacket. Under these circumstances the photograph identification was not impermissibly suggestive. Compare State v. Cass, 356 So.2d 936 (La. 1978); State v. McSpaddin, 341 So.2d 868 (La. 1977); State v. Hargrove, 330 So.2d 895 (La.1976).
Defendant's contention that the viewing of the second photograph was prejudicial to the identification lacks merit, because it is clear from the record that this second photograph was not shown to the victim until after defendant had already been identified from the photographic line-up and the victim had given a written statement to that effect to the investigating officer. The officer testified that he then showed the victim the second photograph of defendant in order to minimize the possibility of misidentification in such a serious crime.
Moreover, even if the identification procedure might be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process and not merely the suggestive identification procedure. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 *1266 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
In the instant case, the victim observed the robber clearly during the armed robbery. The following day, he again observed the suspect in a nearby restaurant. The photographic identification occurred within two days of the offense. The victim's identification of defendant was unequivocal. Thus, there was no substantial possibility of misidentification due to the fact that defendant was shown wearing a jacket or the victim was shown a second photograph of defendant after identifying him as the robber from the first group of photographs.
Refusal to Order Mistrial
In his supplemental brief defendant contends that the trial court erred in failing to grant a mistrial due to prejudicial remarks made by a police officer during his testimony.
The officer testified that after he obtained a description of the robber from Murphy, he received a report that a person fitting the description of the robber had been seen in a bar in the area and that the person seen in the bar had recently been released from Angola. Defense counsel objected and moved for a mistrial, arguing that the officer's testimony clearly implied that the defendant had recently been released from Angola and thus constituted impermissible reference to other crimes.
C.Cr.P. art. 770(2) prohibits reference by a district attorney or court official to other crimes by the defendant as to which evidence is not admissible, under penalty of a mandatory mistrial. However, such a remark by a witness does not require declaring a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure defendant a fair trial. C.Cr.P. art. 771.
An investigating officer is a witness, but is closely related to the district attorney in presentation of the prosecutor's case. Therefore, a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial, and may require granting a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. Nevertheless, the decision as to the necessity of granting a mistrial in these circumstances was left to the sound discretion of the trial court. See State v. Madison, 345 So.2d 485 (La.1977); State v. Brown, 322 So.2d 211 (La.1975); State v. Schwartz, 354 So.2d 1332 (La.1978). The present case does not reveal a manifest abuse of discretion warranting the substitution of our judgment for that of the trial judge who conducted the trial, heard the remark, and was in the best position to assess its impact.
Sentencing Procedure
In sentencing defendant, the trial judge stated for the record that he was imposing the harsh sentence because of defendant's extensive criminal history which reflected an incorrigible and violent nature.[1] Despite the brevity of his reasons, the trial judge adequately complied with the sentencing guidelines in C.Cr.P. art. 894.1, which requires the sentencing judge to "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." The purpose of the statute is to guide and assist the trial court in the exercise of its broad discretion regarding the imposition of a fair and proper sentence in a particular case by adapting the sentence to the offender as well as to the offense. State v. Jackson, 360 So.2d 842 (La.1978). Further, the articulation *1267 of factors considered in imposing sentence facilitates review by this court to assure that sentences imposed are not arbitrary or based on impermissible factors.[2]
In this case the sentencing judge has given more than a verbatim recitation of the language of the statute. He has cited the factual basis for his conclusion that the "apparently severe" sentence imposed in this case was appropriate. State v. Jones, 381 So.2d 416 (La.1980). Although the sentencing judge did not enumerate each factor listed in art. 894.1, we accept the judge's assertion that he based his very lengthy sentence on defendant's prior criminal history and the violent manner in which defendant perpetrated the offense in question. Thus, while a more detailed recitation would have been more helpful, the record provides this court with an adequate basis for review and constitutes adequate compliance with C.Cr.P. art. 894.1.[3]
Excessiveness of Sentence
We also cannot conclude from this record that the sentence constituted excessive punishment prohibited by La.Const. 1974, Art. 1, § 20. Defendant committed a violent and dangerous crime, strongly condemned by our legislature.[4] An armed robbery creates an atmosphere "fraught with danger" to the victim and to others who may be present, as well as to the accused himself. State v. Levi, 250 So.2d 751, 753 (La.1971). The armed invasion of the victim's home at night presents an especially terrifying scene in this particular case.[5]
Defendant's criminal history reflected three prior felony convictions: two for simple burglary (1968 and 1974) and one for possession of heroin (1974). This record certainly manifests a propensity for felonious behavior.[6]
This record does not reflect any abuse of discretion which mandates interference by the appellate court in the sentencing process. Rather, one can plainly see that the trial court's sentence was founded on non-arbitrary considerations based on record facts. The danger that defendant will continue to perpetrate dangerous felonies, if not institutionalized for an extensive period, is obvious. Furthermore, defendant apparently presented no mitigating facts to the trial court, and none were apparent from the circumstances of the case. While defendant urges that the sentence was excessive, any factors weighing in favor of a lesser sentence were not presented to the trial court and have not been argued on appeal.[7]
This court does not lightly consider the matter of a 99-year sentence imposed without hope of release on parole. There may be sound arguments against the frequent use of such sentences, but these arguments address themselves to the reasoned discretion *1268 of the sentencing judge. The function of the reviewing court is not merely to substitute this court's judgment for that of the trial court, but to determine whether the court below manifestly abused its discretion. In this case we cannot find such abuse.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In giving reasons for sentence, the judge said:

"Okay, the court has satisfied itself with having looked at the rap sheet of the defendant, and the previous convictions involved in this man's criminal history, and the court is satisfied that Mr. Douglas is, in the court's opinion, an incorrigible, violent criminal, and at this point the court will sentence Mr. Charles R. Douglas, also/known/as Robert Charles Douglas, or whatever the case may be, to the Louisiana Department of Corrections to serve, at hard labor, a period of time in the amount of ninety-nine years, and will remand the prisoner for the execution of that sentence. May God bless your soul. Okay, remand the prisoner. And that's without the probation or parole or suspension of sentence."
[2] For example, the United States Supreme Court has held that a sentencing court may not consider prior convictions obtained in violation of the defendant's right to counsel. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1972). Of course, the sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information. See United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
[3] A recitation such as that suggested in the Louisiana Judges' Bench Book is of immense value to a reviewing court and also serves to assist the trial judge in properly assessing the appropriateness of the sentence he proposes to impose.
[4] A penalty provision denying the opportunity for probation or parole, in addition to the length of the maximum term, reflects the severity of the punishment which the legislature expects to be imposed for this offense.
[5] The state apparently chose not to prosecute for aggravated burglary, R.S. 14:60, which is also involved when one without authority enters an inhabited dwelling while armed with a dangerous weapon with intent to commit theft. See State v. Lozier, 375 So.2d 1333 (La.1979); State v. Powers, 344 So.2d 1049 (La.1977).
[6] There are additional convictions for less serious offenses appearing in his record of arrests and prosecutions on "rap sheet".
[7] We do not mean to imply that mitigating factors should be presented or argued to this court for the first time on appeal. Mitigating factors are properly introduced in the trial court for consideration in sentencing.