412 So.2d 1051 (1982)
STATE of Louisiana
v.
James E. JONES.
No. 81-KA-2519.
Supreme Court of Louisiana.
April 5, 1982.
*1052 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Stephen Wimberly, Abbott J. Reeves, William C. Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
Robert Garrity, New Orleans, and Joseph Montgomery, Metairie, of Indigent Defender Board; William Noland, New Orleans, for defendant-appellant.
WALTER I. LANIER, Jr., Justice Pro Tem.[*]
By bill of information filed on April 13, 1981, the defendant, James E. Jones, and James E. Johnson were jointly charged with committing armed robbery of Margaret Davison on March 24, 1981, in violation of La.R.S. 14:64. The defendant was arraigned on May 15, 1981, and plead not guilty. On June 10-12, 1981, the defendant was tried and found guilty. On June 19, 1981, he was sentenced to serve fifteen years in the custody of the Louisiana Department of Corrections at hard labor without benefit of probation, parole or suspension of sentence. The defendant has appealed and urges two assignments of error.

ASSIGNMENT OF ERROR NO. 1
In his original brief the defendant claims that the trial court committed error by failing to grant a recess of the trial so that the co-defendant, James Johnson, "no longer needed Fifth Amendment protection ..." and could be questioned about a letter purportedly written by him which supported the defendant's claim of compulsion (La. R.S. 14:18[6]). In his supplemental brief, the defendant urges that the "Trial Court misinterpreted Ruling # 81-K-1528 [sic] of the Supreme Court of Louisiana, permitting counsel for the witness to assert the Fifth Amendment privilege in his stead." The defendant contends that these actions are in violation of the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution of 1974 and denied him the right to "present a defense".
The testimony introduced by the State at the trial showed that on March 24, 1981 at approximately 2:30 a. m., two men committed armed robbery of the Time Saver at 401 Lapalco Boulevard in Gretna, Parish of Jefferson, Louisiana. Margaret Davison was the cashier on duty this night. The persons who committed the robbery entered the Time Saver separately with the second man entering approximately ten seconds after the first man. Both of the robbers were armed with pistols. The first man took $109.00 from Miss Davison. The second man stopped inside the door and forced a customer, Leon Robinson, who arrived while the robbery was in progress, to lie on the floor where he put a gun to his head and robbed him of his wallet and $10.00 in cash. Davison and Robinson both identified the defendant as the second man. After the robbers left, the crime was reported. The defendant and James Johnson were arrested *1053 shortly thereafter in a parked car two or three blocks from the scene of the robbery. The defendant, James Jones, was seated on the drivers side of the parked car. A .32 caliber pistol loaded with 2 live rounds was found on the seat next to him. James Johnson was seated on the passenger side of the vehicle. A .38 caliber pistol loaded with 6 live rounds was found on the floor board under the seat on the passenger side. Also found in the vehicle was cash money and Leon Robinson's wallet.
At the trial James Jones claimed the defense of compulsion. He testified that a friend of his by the name of James Johnson, also known as Ray Vaughn, held a gun on him and forced him to enter the Time Saver; that Johnson gave him an empty gun and followed him into the store; and that he was forced by Johnson to rob the cashier while Johnson stood by the door. He further testified that Johnson made him take the wallet and money from Leon Robinson and that he merely followed Johnson's orders throughout the incident out of fear for his life.
Prior to the trial the defendant asked for a severance and it was granted. On June 3, 1981, the defendant applied for a writ of habeas corpus ad testificandum for the production of James Johnson at the trial of the case, which was denied by the Trial Judge because "There is a present sanity hearing on James Johnson & until his hearing is completed the Court would deny this motion."
On the second day of the trial, June 11, 1981, counsel for the defendant called James Johnson as a defense witness.[1] Johnson was represented by Mr. Roy Ladner. Mr. Ladner advised the Court that he was not certain how coherent or able his client was to claim his Fifth Amendment rights. He stated that if it appeared that the witness was not able to exercise his Fifth Amendment rights properly, he would ask that a declaration of incompetency be made at that time.[2] Mr. Ladner further advised the Court that a motion for a sanity commission had been filed in Johnson's case; that two psychiatrists were appointed but were unable to make a final decision until additional neurological examinations were made; and that because of Johnson's condition, he was unable to properly evaluate any defenses that might be available to him or his ability to testify in the trial.[3] Counsel for the defendant, Jones, insisted on exercising his right to compulsory process of Johnson. An unsworn interrogation of Johnson was conducted by the Court out of the presence of the jury. A review of this interrogation shows that the witness identified himself as Johnson with an address of Tuscadero State Hospital (California), that he did not know his age, that he said he knew the difference between telling the truth or not, but he failed to respond to some of the questions propounded.[4] He was then questioned by his own attorney and indicated that he knew that he did not have to testify against himself, that he did not know what he was charged with, but appeared to be confused as to when he should answer questions or when he should not answer questions.[5] At this point, the Trial Judge ordered the witness to be sworn and the jury returned to the courtroom. After Johnson was sworn, his counsel objected to any questions being asked by the State or the defense and requested authority to apply to this Court for supervisory writs. The Trial Judge granted this request and gave counsel until the following morning, June 12, 1981, to get a reply.
On June 12, 1981, under Docket Number 81-KA-1528, this Court denied the supervisory writ with the following instructions:
"The trial judge found that the witness is competent. Counsel for the witness need not rely on `signals' to the witness to advise him that he should invoke the Fifth Amendment right against self-incrimination, *1054 but may advise the defendant when he is asked a question, and may speak for him in claiming the Fifth Amendment privilege if, as it appears, defendant cannot speak because he suffers from expressive aphasia."[6]
Upon commencing Court on June 12, 1981, counsel for Johnson advised the Court that Johnson no longer wished for him to be his attorney since he thought he was a psychiatrist and was a conspirator and working for his (Johnson's) opposition.[7] This request was denied by the Trial Judge and he ordered Mr. Ladner to continue as Johnson's attorney. Thereafter, in the presence of the jury, counsel for the defendant, Jones, made the following statement:
"Your Honor, I understand that the Supreme Court ruling is in favor of the ruling of Your Honor, in this matter, and that Mr. Ladner will be allowed to stand with the witness, I had called yesterday, when he testifies, and invoke the Fifth Amendment for him."[8]
Thereafter, in the presence of the jury, she made a motion for a mistrial on the grounds that the competency of Johnson was discussed in front of the jury on June 11, 1981. The jury was then retired and after argument on this motion, the request for a mistrial was denied by the Trial Judge. During the course of the argument for a mistrial, counsel for the defendant, Jones, made the following statement:
"It's not that I don't want him present and it's not that I'm objecting to the ruling of the Supreme Court. What I am objecting to, is an argumenta challenge, to my witness, in the presence of the jury, and I think that's a valid argument and it is supported in this quote."[9]
Thereafter, still out of the presence of the jury, counsel for the witness, Johnson, again requested to be released as counsel of record. This request was denied by the Trial Judge with the observation that "This man needs competent counsel, for the purposes that the Court set out yesterday." Immediately thereafter, still out of the presence of the jury, counsel for the defendant, Jones, made a motion to recess the trial until Johnson's competency could be finally determined in another Division of the Twenty-Fourth Judicial District Court. This motion was also denied.[10]
The jury was then returned to the courtroom and in the presence of the jury, counsel for the defendant, Jones, made the following statement:
"Your Honor, the defense would like to call Mr. James Johnson, who is also known as Ray Vaughn to the stand.
"For the record, Your Honor, the defense would note that the Supreme Court has ruled that Mr. Ladner, as the attorney for the witness, must be present at this time and will be allowed to invoke the Fifth Amendment for him."[11]
Counsel for the defendant, Jones, then commenced questioning the witness, Johnson. The witness again claimed that he was living in the Tuscadero State Hospital in California, that a "bunch of devils is workingworking a conspiracy against me, yea...." and that "There's alot of devils in here right now. And they all got wings, and be flying, and I been trying to let everybody know about it, you see."[12] Counsel for the defendant, Jones, then commenced to question the witness, Johnson, about a letter purportedly written by him while in jail and counsel for the witness invoked the Fifth Amendment on his behalf. The witness then blurted out, after his counsel's claim of a Fifth Amendment *1055 privilege, that the letter was his.[13] Counsel for the State then requested that the jury be retired and the Court so ordered. (The letter in question is that found at pages 19 and 21 of the transcript purportedly written by James Johnson in the Jefferson Parish Correctional Center on or about April 9, 1981.)[14] During the course of the discussions out of the presence of the jury, counsel for the witness advised counsel for the defendant that he was invoking the Fifth Amendment to any questioning of the witness about the letter because the letter would incriminate the witness. After reading the letter, the Court agreed. Counsel for the defendant offered to introduce the letter into evidence and the Trial Judge ruled that to do so would violate the witness' Fifth Amendment rights.[15]
While still out of the presence of the jury, the witness remarked that "I don't want this devil here representing my case. I know that he's a conspirator, yeh. He looks just like one. And that's the reason why, that he's doing what he's doing now. And mayeverybody knows that he's a conspirator. I know you're a conspirator, yeh." Counsel for the witness then requested that other counsel be appointed for the witness, which request was denied by the Court.[16]
The jury was again returned to the courtroom and defense counsel continued to question Johnson. To most of the questions, counsel for the witness invoked the Fifth Amendment without objection from counsel for the defendant. During cross-examination by the State, counsel for the witness invoked the Fifth Amendment to almost all of the questions asked, and there was no objection from counsel for the defendant. The witness was thereafter excused.
In the original brief filed herein, counsel for the defendant states that "Defendant does not quarrel with James Johnson's exercise of his right against self-incrimination, but feels that the Trial Judge should have recessed the case until James Johnson no longer needed Fifth Amendment protection, C.Cr.P.Art. 708." A recess is a temporary adjournment of a trial that occurs after the trial has commenced. State v. Charles, 350 So.2d 595 (La.1977). The granting of a recess is a matter within the sound discretion of the Trial Judge and will not be reversed in the absence of a showing of an abuse of that discretion. State v. Telford, 384 So.2d 347 (La.1980). The fact that a witness claims his privilege under the Fifth Amendment and refuses to testify is not a valid basis for a recess, a continuance or a new trial, unless it can be demonstrated with certainty that the privilege will not be available to the witness in the immediate future. State v. Bice, 390 So.2d 1270 (La.1980) and Docket Number 81-KA-0322 of this Court decided December 14, 1981.[17] No such showing has been made in this case.
For the first time on appeal, the defendant urges that the Trial Court committed error by permitting counsel for the witness to assert the Fifth Amendment privilege for him in lieu of requiring the witness to assert the privilege personally. He argues that the witness did not have expressive aphasia, that he demonstrated a willingness to testify, that he wished to discharge his attorney and that he was found competent to testify by the Trial Judge. After the order entered by this Court in Docket Number 81-KA-1528 on June 12, 1981, counsel for the defendant specifically stated in front of the jury that counsel for the witness had authority pursuant *1056 to this Court's ruling to invoke the Fifth Amendment privilege for the witness, and stated that she did not challenge or object to the ruling of this Court in that regard. The record amply demonstrates that there were serious questions raised concerning the ability of the witness to properly assert his Fifth Amendment privilege. Under these particular factual circumstances, counsel for the witness properly exercised the Fifth Amendment privilege on behalf of his client.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant claims that the Trial Court erred by failing to comply with the sentencing guidelines of Article 894.1 of the Code of Criminal Procedure, and that the sentence to fifteen years at hard labor in the custody of the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence is excessive.[18]
A majority of this Court has held that Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment, and that although a sentence may be within statutory limits, it may violate a defendant's Constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). A Trial Judge's reasons for sentence, as required by Article 894.1, are an important aid to an appellate Court when called upon to review a sentence complained of as excessive. However, the Trial Judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La.1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979).
The record reflects that the Trial Court did not adequately consider the 894.1 guidelines in particularizing the sentence of the defendant.[19]State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). However, where a sentence imposed is not "apparently severe" and is in the "lower range" of the sentencing scale, this Court will not remand for compliance with Article 894.1. State v. Bowick, 403 So.2d 673 (La.1981); State v. Day, 391 So.2d 1147 (La.1980). Armed robbery is considered an extraordinarily serious crime in the State of Louisiana. State v. Douglas, supra. In State v. Jones, 381 So.2d 416 (La.1980), an employee of a 7-11 Food Store was robbed at gun point of the contents of the store's cash register. The defendant in that case was convicted and sentenced to fifteen years at hard labor without benefit of probation, parole or suspension of sentence. Although the Trial Judge failed to comply with the 894.1 guidelines in that case, we declined to remand because the defendant's sentence was not apparently severe and was not an abuse of discretion. That case is almost identical to the instant case and the result should be the same.
Assignment of Error No. 2 is without merit.

DECREE
The defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs.
NOTES
[*] Judge Walter I. Lanier, Jr. of the Court of Appeal, First Circuit and Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Twenty-Fourth Judicial District Court, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] Transcript p. 308.
[2] Transcript pp. 309 and 310.
[3] Transcript pp. 310 and 311.
[4] Transcript pp. 314 to 316.
[5] Transcript p. 317.
[6] Attached to the writ application is a letter from Dr. E. T. Frank, Jr., dated May 27, 1981, who examined a prisoner named Ray Vaughn and made a preliminary diagnosis of expressive aphasia.
[7] Transcript p. 327.
[8] Transcript p. 328.
[9] Transcript p. 331.
[10] Transcript pp. 332 and 333.
[11] Transcript p. 333.
[12] Transcript pp. 338 and 339.
[13] Transcript p. 340.
[14] The letter is inadmissible hearsay. State v. Landry, 388 So.2d 699 (La.1980); State v. Martin, 356 So.2d 1370 (La.1978); State v. Jenkins, 340 So.2d 157 (La.1976); State v. Herman, 304 So.2d 322 (La.1974).
[15] Transcript p. 348.
[16] Transcript pp. 348 and 349.
[17] The request for the recess in the Trial Court was to get a "final determination of this man's competency" in another Division of the Twenty-Fourth Judicial District Court. Transcript p. 332. This objection was not raised or briefed on this appeal.
[18] Sentencing procedure at pages 480 and 481 of the transcript.
[19] "I have reviewed the records and I've come to the conclusion that you are in need of correctional treatment. I sentence you to fifteen (15) years in the State Penitentiary with the Department of Correction.

"The armed robbery statute provides, that whoever commits the crime of armed robbery, should be imprisoned at hard labor for not less than five (5) years and not more than ninety-nine (99) without benefit of parole, probation or suspension of sentence. I sentence you to fifteen years. I think any lesser sentence would deprecate the seriousness of this offense. I return you to the custody of the Sheriff's Office, to be forewarded [sic] to the Department of Corrections, at the earliest opportunity."