KLEES, Judge.
On May 18, 1981, the defendant, Charles Washington, was charged with possession with intent to distribute pentazocine (Tal-win), then a violation of LSA-R.S. 40:969.[1]
The jury returned a verdict of guilty as charged and the defendant was sentenced on August 7, 1981 to serve 3½ years in the custody of the prison with credit for time served. On December 28, 1981, the defendant was resentenced as a multiple offender and sentenced to serve 3½ years in prison with credit for time served.
Upon initial review, this Court transferred jurisdiction to the Louisiana Supreme Court by Per Curiam opinion of June 23, 1983. The Supreme Court remanded on July 1, 1983, having determined this Court as the court of proper jurisdiction pursuant to Article 5, Section 5(E) of the Louisiana Constitution of 1974 as amended by Acts 1980 No. 843 § 1.
Defendant, through counsel, urges this Court to review the record for errors patent and pro se assigns one error with regard to certain expert testimony adduced at trial.
On May 9, 1981, pursuant to an anonymous tip that drugs were being sold in the area, four members of the NOPD set up surveillance on the corner of Delery Street and St. Claude Avenue. The officers worked in pairs from two separate vantage points. They observed the defendant on the corner in front of an establishment known as “Shirley’s Bar”. The defendant participated in a series of four or five transactions each following a pattern. Wherein a person, “X”, would approach defendant and engage him in brief conversation. The defendant would walk to the end of the building, reach behind a board, grab a brown paper bag, remove something from it, replace the bag, return to the spot where “X” was waiting and hand over something to “X” in exchange for cash.
The defendant was arrested, the bag confiscated and found to contain pills which were later analyzed as Talwin and Pyraben- *793 zamine.[2] Washington had $69.00 in his pocket upon arrest. It was further established that the going rate for “t’s and blues” (Talwin and Pyrabenzamine) was $10.00 per set at the time of the arrest.
At trial Officer Elder of the NOPD was qualified as an expert in the use and distribution of Talwin.
Officers McCord, Deal and Gonzales, three of the four officers involved in the surveillance gave testimony. Officer McCord’s testimony at the hearing on a motion to suppress differs somewhat from the account he and his fellow officers gave at trial. At the suppression hearing, McCord stated that there may have been 8 or 9 transactions and that “a couple of hundred” or $180.00 in cash was found on the defendant when he was arrested.
On cross examination, defense counsel tried to impeach Officer McCord’s credibility by way of the foregoing inconsistencies. The defense called only one elicited witness. An investigator testified that the officers could not have seen the supposed transaction if they were in fact at their surveillance point.
The state then offered three witnesses in rebuttal. Officer Deal a member of the surveillance team, testified as to whether his view was obstructed on the date of the arrest. Donald Guillot, an investigator/photographer for the District Attorney’s office, evaluated the camera equipment and quality of the photographs taken by the defense. Sam Mulldaven gave an account of his on-site inspection of the scene and his ability to observe activity under conditions similar to the original surveillance. After closing argument, the jury retired for half an hour and returned a verdict of guilty as charged.
A review of the record discloses no errors patent.
The defendant was sentenced on August 7, 1981 and resentenced as a multiple offender on December 28, 1981, to serve 3½ years with credit for time served. Although it would appear that this was defendant’s fourth offense and that he was sentenced only as a second offender, when the multi-bill is reviewed in light of the five year cleansing period provided in LSA-R.S. 15:529.1(C), it can be determined that the first two offenses were correctly excluded and that the sentence is within the minimum legal limits found in the relevant statutes. LSA-R.S. 40:969 and LSA-R.S. 15:529(A)(1).
There is sufficient evidence on each element of the offense for a jury to have found the defendant guilty beyond a reasonable doubt when the evidence is viewed in the light most favorable to the prosecution. Jackson v. Virginia, 343 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Although the contraband was not found on the defendant’s person, the testimony clearly establishes that it was located in an area over which defendant exercised dominion and control. State v. Walker, 369 So.2d 1345 (La.1979); State v. Gann, 319 So.2d 396 (La.1975). In Walker, and Cann, the state failed to establish that either defendant knew where the contraband was located. Not so here, where three police officers saw the defendant repeatedly walk to the site where the narcotics were found, reach for the bag that contained them, remove them, and exchange them for cash.
The defendant argues that it was error for the trial judge to allow Officer Elder of the NOPD to be qualified as an expert in the field of narcotics. He argues that Elder lacked sufficient training in the field, that Elder’s testimony as to distribution was hearsay, and that Edler’s detailed account as to use of Talwin was inflammatory and so prejudicial as to be deemed reversible error.
Officer Elder testified that he had spent 6V2 years with the NOPD, the last 2 in narcotics. He further testified that he had participated in 150-200 Talwin-related investigations and arrests. Of those, 100 had involved surveillance, and of those hundred, approximately 75, where a subject *794 was using a stash. Although Elder admitted that he had not attended special classes outside his course of study at the police academy, the competency of an expert is based upon “his knowledge of the subject about which he is called to express an opinion.” LSA-R.S. 15:466. On the basis of the officer’s first-hand experience with Tal-win, it cannot be said that the trial court abused its discretion in admitting Elder as an expert witness. In State v. Clay, 408 So.2d 1295 (La.1982),.a police officer of 1½ years experience, who had participated in 30 hasish related arrests, was qualified as an expert on the packaging and distribution of marijuana. In State v. Carter, 347 So.2d 236 (La.1977), two police officers, one of whom had no special training in narcotics, were both accepted as experts. The court stated that:
[s]ince the officers had a great deal of practical experience and knowledge in the techniques and procedures employed in the sale of controlled dangerous substances in the City of New Orleans, the defendant has not demonstrated that the judge abused his discretion in accepting the officers as experts in this area. Carter, at 238.
The defendant next argues that Elder’s testimony as to the manner in which Talwin is customarily sold was hearsay and that it was error for the trial judge to admit said testimony over counsel’s objection. However, opinion testimony of an expert is admissible when that opinion is based on the expert’s special knowledge obtained through training or experience. LSA-R.S. 15:464. In Clay, the court said that “it is well established that a witness may draw inferences from facts personally observed by him.”, 408 So.2d at 1299, citing State v. Stewart, 357 So.2d 1111 (La.1978) and State v. Clark, 340 So.2d 1302 (La.1976). In the instant case, Officer Elder testified only as to matters based upon his direct observation. He offered no testimony as regards to defendant Washington: no opinion as to Washington’s guilt or innocence. See State v. Wheeler, 416 So.2d 78 (La.1982) and State v. Montana, 421 So.2d 895 (La.1982), wherein both convictions were reversed because the officer/experts made conclusory statements on the ultimate issue of guilt usurping thereby the jury’s functions.
Perhaps the most serious contention offered by the defendant is that Elder’s testimony as to the use of Talwin was irrelevant to the offense charged (possession with intent to distribute) and was so inflammatory and prejudicial that it led to his conviction.
In the instant case, Officer Elder testified, in pertinent part, as follows:
“... He’ll then tie off his arm. They shoot in numerous places on their bodies. I’ve spoken to people that have shot into their legs, they’ve shot into the veins in their-neck, females have shot in the veins in their breasts. The majority of people will shoot into veins in their arms until their veins collapse, where they can’t shoot into them anymore, so they have to look for new places to shoot. But, the majority of people will shoot in their arms. They’ll take a belt, a scarve, or a piece of rubber, a rubber tube and tie off their arm so their veins sticks out more.... ”
The defendant contends that Elder’s testimony, when taken as a whole, created an inference that Washington was a drug user financing his habit through drug sales and that this, in turn, influenced the jury’s deliberations and resulted in his conviction.
Without expressly designating a specific assignment of error, Washington, pro se, is essentially challenging the trial court’s denial of the defense’s motion for mistrial and alternatively, the court’s failure to admonish the jury when Elder was permitted to testify as to the use of Talwin.
Prejudicial remarks by a judge or district attorney may result in a mistrial. C.Cr.P. 770. Those by an investigating officer may be the basis for an admonition to the jury. C.Cr.P. 771. In some instances, “a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial, and may require granting of a mistrial, especially if the remark was precipitated by or should *795 have been anticipated by the district attorney.” State v. Douglas, 389 So.2d 1263, 1264 (La.1980).
In Douglas, it was argued that the testifying officer had implied that the defendant was recently released from Angola and that the testifying officer had therefore made an impermissable reference to other crimes. The Supreme Court concluded that
“[t]he decision as to the necessity of granting a mistrial in these circumstances was left to the sound discretion of the trial court. See State v. Madison, 345 So.2d 485 (La.1977); State v. Brown, 322 So.2d 211 (La.1975); State v. Schwartz, 354 So.2d 1332 (La.1978). The present case does not reveal a manifest abuse of discretion warranting the substitution of our judgment for that of the trial judge who conducted the trial heard the remark, and was in the best position to assess its impact.” Douglas at 1266.
In the instant case, Elder’s testimony was of questionable relevance and perhaps unnecessarily lurid. Nonetheless, the trial court was in the “best position to assess its impact” and that it was not an abuse of discretion so manifest as to merit reversal.

C.Cr.P. Art. 921

A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
To trigger the need for an admonition, “the remark must refer to a crime alleged to have been committed by the defendant.” State v. Hayes, 414 So.2d 717, 721 (La.1982). No direct references to Washington as a user were made by Elder or for that matter, by any of the witnesses or counsel at trial.
Accordingly, for the reasons stated, the conviction and sentence are affirmed.
AFFIRMED.

. LSA-R.S. 40:964, which lists controlled dangerous substances according to various schedules, was amended in July of 1981. Talwin was removed from Schedule IV, governed by LSA-R.S. 40:969 and added to Schedule II, governed by La.R.S. 40:967. The effective date of the legislation was September 11, 1981. As the offense here was committed in May of 1981, LSA-R.S. 40:969 is the applicable statute.

. The record does not contain a statement as to the quantity of drugs contained in the bag.