452 So.2d 234 (1984)
STATE of Louisiana
v.
Alfred WILLIAMS.
No. KA 83 1297.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*235 Ossie B. Brown, Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen S. Richey, Baton Rouge, William J. Guste, Jr., Atty. Gen., State of La., New Orleans, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
The defendant, Alfred Williams, was charged by a bill of information with simple robbery in violation of La.R.S. 14:65. He pled not guilty, waived his right to trial by jury, was tried by the district court judge and was found guilty. The district court judge sentenced the defendant to serve seven years in the custody of the Louisiana Department of Corrections.

SUFFICIENCY OF EVIDENCE
The defendant contends that the verdict of guilty is based on insufficient evidence to convict.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has now been made statutory. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983); cf. State v. Captville, 448 So.2d 676 (La. 1984).
A plea of not guilty places upon the State the burden of proving beyond a reasonable doubt each element of the crime with which the defendant is charged. La. R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983). The crime of simple robbery is defined in La.R.S. 14:65 as follows:
Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
Wilbur Williams testified that he got off work at approximately 4:00 p.m. on March 5, 1983, and went to Johnny's Liquor Store and Lounge (Johnny's) located at the corner of Terrace and East Boulevard in East Baton Rouge Parish and started drinking beer. After a while, he left Johnny's and went to the Wagon Wheel Bar a short distance away, but then went back to Johnny's. At some unspecified point in time at Johnny's, Wilbur Williams bought a small bottle of wine for a woman named Pat Heard and paid for this purchase out of his wallet which contained approximately $280 in cash. At approximately 7:00 p.m., Wilbur Williams left Johnny's and walked to his car (a 1971 Ford LTD). He was approached by Faye Williams, Alfred Williams and another man and another woman whom he could not identify. Faye Williams struck Wilbur Williams on the head with her hand and knocked him down. Faye Williams, Alfred Williams and the two others then held Wilbur Williams down and took his wallet and car keys. The four *236 persons then took Wilbur Williams' automobile and left. Wilbur Williams walked to his home located approximately four or five blocks away and told his wife of the incident. His wife recommended that the incident be reported, and the police were called by telephone at approximately 7:30 p.m. Wilbur Williams then walked to the police station which was located approximately three blocks from his home. Shortly afterwards, the police recovered his vehicle near Charlie's cab stand on East Boulevard in the vicinity of Johnny's. Wilbur Williams had five or six beers while he was in Johnny's.
Larry Servick, Wilbur Williams' stepson, testified he knew Faye Williams and Alfred Williams prior to the incident because they lived in the same neighborhood. On March 5, 1983, Servick's stepfather, Wilbur Williams, came home and told Servick's mother (Mrs. Wilbur Williams) that somebody jumped him and got his car and money. Servick's mother told him to go look for the car, and he left the house to do so. When he was on East Boulevard, he saw his stepfather's car coming toward him and then park in the driveway of Charlie's cab stand, which is in the vicinity of Johnny's. He saw four people in the car eating something. Faye Williams was in the driver's seat and got out of the car. Servick went to a barber shop in the neighborhood, called his mother and reported what he saw. He then ran home. Later, the police caught the people in the car at Charlie's cab stand.
Thomas Pique, an officer with the Baton Rouge Police Department, testified that on March 5, 1983, he went to Wilbur Williams' home at approximately 7:30 p.m. Larry Servick called while Pique was at Wilbur Williams' home and reported seeing the missing vehicle. Pique left and went to look for the car but did not find it. He then returned to the police station. Pique was then advised that the vehicle was still at Charlie's cab stand, and he went back and found the vehicle in front of Charlie's cab stand on East Boulevard. Alfred Williams, Pat Heard and an unnamed female were seated in the vehicle. The driver's seat was empty, and Faye Williams was standing next to the car. Pique arrested all four and patted them down. No money was recovered from these people. Pique conducted a quick search of the vehicle but found nothing. He then gave the vehicle to Larry Servick.[1] Pique testified Wilbur Williams was intoxicated, and he saw no evidence of injury. Wilbur Williams identified Alfred Williams and Faye Williams as persons who robbed him but could not identify either of the other two persons arrested.
Lillie Louise Johnson testified that she went to Johnny's about 3:30 or 4:00 p.m. on March 5, 1983. She drank a pint of Seagram's Gin before she left her home. While at Johnny's, she drank three or four more shots of gin. When she entered Johnny's, Faye Williams and Pat Heard were in the back of the place. Wilbur Williams was in the front with a group of men and was buying drinks for people. Johnson heard Wilbur Williams arguing with another woman and accusing her of robbing him at a motel. He told her he wanted his money back. She then saw Faye Williams and Wilbur Williams talking, and both left Johnny's but came back in. Johnson saw Faye Williams leave Johnny's again, and Johnson went to look for her. When Johnson got outside of Johnny's, she saw Wilbur Williams laying on the ground, and Alfred Williams and Faye Williams were standing nearby. Wilbur Williams got up and left. Faye Williams told Johnson she had the keys to Wilbur Williams' car and asked Johnson to go riding. She then went with Faye Williams, Pat Heard and Alfred Williams in Wilbur Williams' car to Faye Williams' mother's home. Johnson did not see anyone take anything from Wilbur Williams and did not see anyone use force or violence upon him. Wilbur Williams was full of drinks and was wobbling. Johnson did not see Wilbur Williams give his car keys to Faye Williams. Johnson did not tell Officer Pique that she *237 saw Faye Williams and Alfred Williams knock Wilbur Williams to the ground.
Faye Williams testified that she saw Wilbur Williams between 4:30 and 5:00 p.m. on March 5, 1983, at Johnny's. Faye Williams worked at Charlie's cab stand located down the street from Johnny's at 1349 East Boulevard. Wilbur Williams bought Faye Williams several drinks. At about 2:00 or 2:30 p.m., Valerie Brown left with Wilbur Williams to "turn a trick", but Wilbur Williams must have been "clipped" and came back to Johnny's and cursed Pat Heard. Wilbur Williams then gave Faye Williams the keys to his car so she could help find Valerie Brown. Faye Williams and Pat Heard left and went to a wedding reception but returned again to Johnny's. During this time, Faye Williams drank a few shots of gin. Faye Williams went outside. Wilbur Williams followed her and started cursing her. Faye Williams hit Wilbur Williams and he fell down. Her cousin, Alfred Williams, was across the street at Delpit's Chicken Shack and came over. Louise Johnson came out of the door of Johnny's after the fight. Alfred Williams never touched Wilbur Williams. Faye Williams and Alfred Williams did not take any money from Wilbur Williams. Wilbur Williams then used bad words and hollered for his keys back. Faye Williams went back to Johnny's and had another drink. Faye Williams then took Wilbur Williams' car to go home to change. Faye Williams admitted that she had been convicted of forgery, cruelty to juveniles, carrying a concealed weapon in 1974, obtaining drugs by fraud in 1975, resisting arrest in May of 1978 and a fistic encounter in April of 1979.
Officer Pique was recalled and testified that on March 5, 1983, he talked to Lillie Louise Johnson as part of his investigation. Johnson told him she observed Faye Williams and Alfred Williams knock Wilbur Williams to the ground, hold him, and Faye Williams took keys out of Wilbur Williams' pocket. Pique also questioned Faye Williams as part of his investigation, and she gave essentially the same story that she gave in court.
The verdict of the district court judge indicates that, after considering the credibility of the witnesses and weighing the evidence, he accepted the testimony of Wilbur Williams, Larry Servick and Officer Pique and rejected the testimony of Faye Williams and Lillie Louise Johnson. The testimony of Wilbur Williams, Larry Servick and Officer Pique is sufficient to prove the elements of the offense of simple robbery and that Alfred Williams aided and abetted in its commission as a principal (La.R.S. 14:24).
The defendant contends that the testimony given by Faye Williams revealed a more acceptable version of the events leading to the alleged crime than the description of the events given by the victim, that the testimony given by the victim is conflicting and difficult to understand, that the victim was intoxicated and that, due to the victim's state of mind and his confusing testimony, there is at the very least a reasonable doubt as to the defendant's guilt. The essence of this argument is that the testimony of the victim is not credible and should not have been accepted. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as "thirteenth juror" in assessing what weight to give evidencethat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. McDowell, 427 So.2d 1346 (La.App. 2nd Cir.1983).
*238 This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE
The defendant contends that the sentence imposed upon him is excessive.
A majority of the Louisiana Supreme Court has held that Article 1, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that, although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La. 1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979).
At the sentencing hearing, the district court judge observed that the defendant was born on August 24, 1946, and had the following adult criminal record:
(1) July 9, 1969illegal carrying of weaponguiltyfined $25;
(2) July 17, 1972disturbing the peace guiltyfined $25;
(3) June 21, 1980misdemeanor theft guiltyfined $100; and
(4) June 24, 1980simple burglary and felony theftpled guilty to simple burglarysentenced to five years at hard labor which was suspended.
The district court judge also noted that the defendant had several arrests, was not cooperative with the probation department on the presentence investigation and used the name Alphonse Williams, Jr.
The maximum authorized sentence for simple robbery is a fine of not more than $3,000, imprisonment with or without hard labor for not more than seven years, or both. The district court did not impose a fine. Had the State elected to charge the defendant as a second felony offender pursuant to the Louisiana Habitual Offender's Law [La.R.S. 15:529.1(A)(1)], he would have been subject to a maximum sentence of confinement of fourteen years and a minimum sentence of confinement of two and one-third years. Because the defendant is a second felony offender, he is not eligible for a suspended sentence or for probation. La.C.Cr.P. art. 893; State v. Francois, 438 So.2d 1317 (La.App. 3rd Cir. 1983); State v. Reed, 437 So.2d 353 (La. App. 4th Cir.1983). These statutes are specific legislation for enhanced punishment for multiple felony offenders and represent a legislative determination relative to the "seriousness of the crime". State v. Phillips, 412 So.2d 1036 (La.1982). The offense in the instant case is a crime of violence against the person where the victim was forcibly knocked to the ground and robbed of $280 in cash and his automobile. Because of the defendant's prior criminal record and the manner in which the offense was committed, we cannot say the sentence imposed by the district court abused the much discretion accorded him by law. State v. Davis, 430 So.2d 680 (La.App. 2nd Cir.1983), writ denied, 433 So.2d 1056 (La. 1983).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Wilbur Williams found his empty wallet under a seat of the car the next day.