486 So.2d 870 (1986)
STATE of Louisiana
v.
Edward Lee SPENCER, Jr.
No. KA 85 1189.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*871 Margaret A. Coon, Brady Fitzsimmons, Asst. Dist. Atty., Covington, for appellee.
Frank Sloan, Office of the Indigent Defender, Covington, for appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Edward Lee Spencer, Jr., was charged by bill of information with cruelty to a juvenile, a violation of La.R.S. 14:93. Defendant pled not guilty and, after waiving his right to a jury trial, was tried by judge alone and found guilty as charged. The court sentenced defendant to serve eighteen months imprisonment at hard labor and to pay a five hundred dollar fine plus all court costs and, in default of payment of the fine, to serve an additional six months imprisonment at hard labor.
Defendant brings this appeal urging three assignments of error, to wit:
1. There is an insufficient factual basis upon which a rational trier of fact could find guilt beyond a reasonable doubt.
2. The sentence is excessive.
3. Because of error patent on the face of the record the conviction must be reversed.
Assignment of error three was not briefed by defendant and is therefore considered abandoned.[1] Uniform Rules Courts of Appeal, Rule 2-12.4.
The testimony of Mrs. Pamela Sharp and the family physician, Dr. William J. Mitchell, indicates that Mrs. Sharp's daughter, Sandra Sharp, the victim, is afflicted with cerebral palsy and is both physically and mentally handicapped. Sandra is confined to a wheelchair and suffers from spasticity of her extremities, depriving her of the use of her extremities. Sandra additionally suffers from epileptic seizures. Dr. Mitchell testified that Sandra's mental capability is the equivalent of that of a three or four year old.[2] Dr. Mitchell stated that Sandra also suffers from visual and hearing impairments. Pamela Sharp testified that Sandra's vision allows her to see "shapes and figures", although she cannot distinguish one person from another or even males from females.
Mrs. Sharp testified that Sandra was enrolled at the Covington Special Education School on March 12, 1984, the date of the instant offense. On that day, Sandra returned *872 home from school on the school bus at about 4:00 p.m. with bruises on her "behind". Mrs. Sharp asked Sandra what had happened but did not receive a "straight answer" from Sandra, who was unable to state that she hurt or was in pain. Mrs. Sharp observed a hand mark with bruises and welts to Sandra's backside. She also discovered a "brush burn" and bruise on Sandra's wrist. The welts lasted until "about that evening", and the bruises persisted for a few weeks.
Mrs. Ora Lee Ingram, a teacher's aide at the school, testified that on the date in question, between 9:00-9:30 a.m., she had been assigned to brush Sandra's teeth. She stated that Sandra acted "sort of strange" that morning. She said she never has trouble with Sandra but on that day Sandra kept "folding up" refusing to permit Mrs. Ingram to brush her teeth. Sandra was biting down on the toothbrush and kept moving her head from side to side as if she were angry. Mrs. Ingram testified that she did not know what was wrong with Sandra. Eventually Sandra bit Mrs. Ingram's thumb, which Mrs. Ingram had placed near Sandra's lip in an effort to keep the toothbrush inside Sandra's mouth. Thereafter, defendant asked Mrs. Ingram to permit him to undertake the task. Mrs. Ingram complied with his request. Sandra, however, persisted in her resistance to having her teeth brushed. Defendant warned Sandra that if she did not allow him to brush her teeth he would spank her. She continued to resist. Mrs. Ingram further testified that defendant then removed Sandra from her wheelchair and gave her approximately three or four "little", "medium hard" spankings. Sandra still refused his efforts to brush her teeth. He then repeated the spanking procedure. Thereafter, he had no trouble finishing brushing Sandra's teeth.
Mrs. Ingram testified that defendant was in control during the spankings and did not become angry, upset or lose his temper. She denied that defendant had mistreated Sandra by administering the spankings.
Mrs. Pamela Penn, another teacher's aide, testified that on the date of the incident, Mrs. Ingram called for defendant's assistance because of Sandra's resistance to Mrs. Ingram's attempts to brush Sandra's teeth. Defendant hit Sandra three or four times, but only on one occasion. She too denied that defendant was angry or had lost control. She, however, testified that she did not know how hard defendant had hit Sandra.
Mrs. Lorraine Penino, a teacher's aide, testified that her classroom is adjacent to the bathroom. On the day of the incident she heard loud talking and "hollering" and "kind of like slaps". She heard defendant's voice telling Sandra to open her mouth. This continued for 5-10 minutes. Mrs. Penino then went into the bathroom to determine what was happening. Mrs. Ingram was standing behind the wheelchair; defendant was in front of it. He kept telling Sandra to open her mouth. Finally, he "just lost control" and "yanked" Sandra from the chair, pulling her by her wrist. He then spanked her five or six times "really hard". She testified that defendant was "terribly upset, just totally out of control" and very angry. He hit Sandra through her bluejeans. She testified that she had never previously seen anyone discipline a child in that manner. Mrs. Penino ran out of the bathroom crying and told defendant she could not stand what was being done.
Later, at about 2:15-2:30 p.m. the same day, Mrs. Penino saw marks on Sandra's buttocks area. The marks were more noticeable on the child's left buttocks.
Mrs. Karen Vandemere, an itinerant adoptive physical education teacher, testified that on the day of the incident, while she was on her way to get Sandra for a physical education class, at about 9:00-10:00 a.m., Mrs. Penino asked her if she would take Sandra into the bathroom to examine Sandra's rear for handmarks. Mrs. Vandemere agreed to the request. She found a red handprint on Sandra's rear. Mrs. Vandemere testified that she was unaware of a similar case whereby a *873 child had been disciplined in such a manner, so as to inflict such a handprint.
Dr. William J. Mitchell, the family's physician, was qualified as an expert in the field of family medicine. He testified that, at about 4:30 p.m. "or later" on the day of the incident, Sandra was brought to him for an examination. In examining Sandra, he found four marks on her, just below the waist and above the buttocks, in the lower back, lumbar lumbosacral area. The marks were red with a very slight tinge of blue. He also found the same type mark on Sandra's dorsal right wrist and he characterized these marks as multiple contusions. He testified that the four marks on Sandra's back "looked like" finger marks where she had been struck. Dr. Mitchell stated that, because of their color, the bruises had been inflicted within hours.
Dr. Mitchell testified that, although Sandra is small for her age, he did not think she would bruise more easily than a normal child. He testified that, in his opinion, if the blows causing the bruises occurred between 9:00-9:30 a.m. on the day he examined Sandra, the force used constituted "pretty much force" and was more force than should be applied in normal discipline. He further testified that, if the blows occurred during that time frame, he would expect the blows to have caused the child pain. He acknowledged that, as stated in a letter from him to the prosecutor, which the state introduced into evidence, the contusions found were compatible with findings one would see in abuse.
Mrs. Ginger Pine, who was qualified as an expert in the field of child protection, testified that she is employed as a human service worker with the Office of Human Development. In that capacity she investigates reports of child abuse and neglect received by her agency. Mrs. Pine testified that the instant incident was reported to her agency. In response, she immediately went to the school and interviewed Sandra's mother, examined Sandra and talked to Dr. Mitchell and school personnel, including defendant.
Upon examining Sandra, on the day following the incident, Mrs. Pine found that Sandra had multiple, blue and red bruises on her buttocks, mostly on the left side. Based upon her examination of Sandra, her interviews, and the doctor's report, she concluded that the instant incident constituted a valid case of child abuse.
Defendant took the stand in his own defense and testified that, on the date of the incident at about 9:15 a.m., Mrs. Ingram encountered difficulties while attempting to brush Sandra's teeth and asked him to intervene. He did so, but also encountered problems with Sandra because of her clamping down on the toothbrush with her teeth. He became fearful Sandra might damage her teeth and commenced the use of "behavior modification procedures". Through the use of those procedures, he had some success in having Sandra open her mouth for him to brush her teeth; however, she continued to clamp down on the toothbrush with her teeth. After employing these "behavior modification procedures" several times without being able to complete the undertaking, defendant warned Sandra he would spank her if she persisted in her resistance. She continued to resist. Defendant then lifted Sandra under her arms and stood her up between her wheelchair and the face bowl. With his left hand on hers, he reached across and administered two "licks" and then placed her back in her wheelchair. Defendant then continued to use "behavior modification procedures" and additionally used "behavior shaping methods", all to no avail. He then announced to Sandra that he would have to spank her again, employing the same spanking methods he had used earlier in spanking her a second time. Again the spanking consisted of two "licks", following which he returned Sandra to her wheelchair. Thereafter, he was able to brush Sandra's teeth without any resistance from her and completed the task without further incident.
Defendant denied that he had grabbed Sandra's wrist in lifting her from the wheelchair during the incident. He also denied that at the time of the incident he *874 was angry at Sandra and that he had yelled at her. He further denied that he had used excessive force upon her, that he had intended to mistreat her or that he had in fact mistreated her.
Defendant presented the testimony of Reverend James Route as to his good character and reputation. Additionally, the state stipulated that, if called as defense witnesses, Otis Campbell and Mary Lee Bookter would testify as to defendant's good reputation in the community.
ASSIGNMENT OF ERROR NO. 1:
By means of this assignment, defendant asserts that the evidence was insufficient to convict him of cruelty to a juvenile. Defendant argues that, while there was evidence to indicate the punishment given to Sandra may have been severe, the evidence was insufficient to establish that he intended to cause Sandra unjustifiable pain or that she did in fact suffer unjustifiable pain. Defendant's argument also appears to essentially contend that his conduct constituted reasonable discipline of a minor by a teacher pursuant to La.R.S. 14:18(4).
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. The record does not indicate defendant made such a motion. A reviewing court, in spite of defendant's failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in art. 821. State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984). The standard set forth in art. 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La. App. 1st Cir.1984).
La.R.S. 14:93 A provides:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen, whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
Defendant's assertion that the evidence is insufficient to establish that he intended to cause the victim unjustifiable pain is clearly without basis, since the provisions of La.R.S. 14:93 A do not require such an intent. The statute instead requires that unjustifiable pain or suffering is caused as a result of intentional or criminally negligent mistreatment or neglect.
The term "intentional" as used in La.R.S. 14:93 refers to general criminal intent, "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." R.S. 14:10(2). State v. Sumler, 395 So.2d 766, 769 (La.1981).
In State v. Comeaux, 319 So.2d 897, 899 (La.1975) in rejecting an argument that the provisions of La.R.S. 14:93 were unconstitutionally vague, the Louisiana Supreme Court stated the following:
"Mistreatment" is in common usage and is equated with "abuse." See Webster's Third New International Dictionary, Verbo abuse. In our opinion, "mistreatment" has a commonly understood meaning.
"Unjustifiable pain and suffering" is illuminated by LSA-R.S. 14:18. Justification can be claimed when the conduct is reasonable discipline of minors by a parent. Viewed in the context of the cruelty to juveniles statute, the challenged words are words of limitation. In a parent's case, the application of the statute is limited to mistreatment causing pain and suffering exceeding the bounds of reasonable discipline.
La.R.S. 14:18(4) provides in pertinent part as follows:
The fact that an offender's conduct is justifiable, although otherwise criminal, *875 shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
* * * * * *
(4) When the offender's conduct is reasonable discipline of minors by their parents, tutors or teachers; ...
In rendering its verdict, the trial court noted that defendant was not in sufficient control of himself to administer any corporeal punishment to the child's buttocks area, as evidenced by the location of the marks inflicted which were in the lumbosacral area. The court also specifically noted the severity of the blows, i.e. that the bruises resulted even though the striking occurred through the child's bluejeans and that the number of blows and their severity were excessive. The court stated that it accepted the expert testimony of Dr. Mitchell who diagnosed the child as having suffered bruises and contusions, as evidence of child abuse.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La. 1984). Herein, the trial court as trier of fact obviously accepted the testimony of Mrs. Penino, Dr. Mitchell and Mrs. Pine.
After carefully reviewing the evidence in the light most favorable to the state, we find that any rational trier of fact (the trial court) could have found all the essential elements of the crime beyond a reasonable doubt. The evidence of record is, therefore, clearly sufficient to support the conviction.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2:
By means of this assignment, defendant asserts that the trial court erred by imposing an excessive sentence. We agree.
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishments. Further, the jurisprudence reflects that a sentence may violate a defendant's constitutional right against excessive punishment even though the sentence is within the statutory limits. State v. Jones, 412 So.2d 1051 (La.1982).
The trial court has wide discretion to impose a sentence within the statutory limits. State v. Washington, 414 So.2d 313 (La.1982). This discretion is subject only to constitutional limitations on excessive sentence and should not be disturbed in the absence of manifest abuse. State v. Burnette, 419 So.2d 835 (La.1982).
A sentence will be considered excessive if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Sims, 410 So.2d 1082 (La.1982). To determine if a sentence is grossly disproportionate, the court must consider the punishment and the crime in light of the harm to society and determine whether or not the penalty is so disproportionate that it shocks our sense of justice. State v. Pearson, 425 So.2d 704 (La.1982). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251 (La.1983).
We find that the trial court committed manifest abuse of discretion in sentencing defendant to eighteen months at hard labor. A sentence of eighteen months at hard labor for this particular defendant's commission of the crime involved in this case clearly shocks our sense of justice. Defendant is a thirty-year-old man with a Bachelor of Arts degree in elementary education with a certification of mental retardation. He has no prior convictions of any kind. Furthermore, the record reflects that defendant has a good reputation in the community and has lost his position with the St. Tammany Parish School System as a result of this crime. Clearly, the circumstances of this case warrant a less onerous sentencing alternative.
After considering the factors enumerated in La.C.Cr.P. art. 894.1, we feel that *876 defendant is a prime candidate for a suspended sentence or probation.
For these reasons, the conviction is affirmed. The sentence of eighteen months at hard labor in the custody of the Louisiana Department of Corrections is reversed and set aside, and the case is remanded for resentencing in accordance with law.
CONVICTION AFFIRMED, SENTENCE REVERSED, AND CASE REMANDED FOR RESENTENCING.
NOTES
[1] Assignment number three technically adds nothing to defendant's appeal, since this Court examines all criminal appeal records for errors patent on the face of the record. See La.C.Cr.P. art. 920(2).
[2] The record reflects that Sandra Sharp, who was age ten on the date of the trial, was born on November 2, 1974, and was nine years of age on the date of the offense.