L JONES, Judge.
Defendant/appellant, Gregory Walker, appeals his conviction for forcible rape and his sentence of twenty years imprisonment, as a second felony offender. After reviewing the record, we affirm his conviction, but remand to the trial court for resentencing.

PROCEDURAL HISTORY

Walker was indicted by a grand jury indictment on June 8, 1995, for one count of aggravated rape. On December 17-18, a twelve-member jury found him guilty of forcible rape. The State then filed a multiple bill, and on December 15, 1998, the trial court sentenced him to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence.
Walker filed a Motion to Quash the multiple bill, a Motion for a New Trial, and a Motion for a Judgment of Acquittal, but these motions were later denied by the trial court. When the trial court determined that Walker was a second-felony offender, it set aside the original sentence and resentenced him to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. From this judgment, Walker filed the instant appeal.
| ¿FACTS
Detective Joseph Lorenzo, who was assigned to the Investigative Services Division of the Child Abuse Section, testified that on April 5, 1995, he received a call from officers in the Seventh District about a possible aggravated rape. The investigation involved Walker and his stepdaughter[1], who was fourteen years old at the time. Lorenzo testified that when he began his investigation, Walker told him that *737 the victim was framing him because he was having marital difficulties and also because he was a substance abuser.
Dr. Mark Wall testified that while he was performing an examination of the victim on April 4, 1995, the victim communicated to him that her stepfather forced her to perform oral sex and to permit vaginal intercourse. He further testified that she told him that this had happened for approximately four years at a frequency of two to three times a week and that her stepfather threatened to cut her throat. In the course of the examination, he found a blood streak at the cervix and noted that there was no hymen. However, the victim did not have any cuts or lacerations on her body.
S.W.[2], who was twelve years old at the time of the incident, testified that on one occasion he saw Walker, who was his father, come into the room he shared with the victim and two other sisters. He testified that Walker was naked and that he told him to turn his head. S.W. immediately turned his head, fell asleep, and did not see anything else. He also testified that the victim was in her bed at the time Walker entered, but he did not see Walker go to the victim’s bed.
IsD.C.[3], who is S.W.’s twin sister, testified that one night she saw Walker come into the room she shared with the victim and S.W. completely naked. She then testified that Walker got into the victim’s bed “start (sic) doing it with her.” D.C. further testified on the next day she and the victim told their mother about the incident the next day.
The victim testified that on April 5, 1995, she told Mama Dorty, a neighbor, that Walker had raped her the day before. The victim testified that while she was on her way to school, Walker asked her why she was afraid of him. She told him it was because of what he had been doing to her; when she tried to run out through the door, he caught her and took her back to the living room. She testified that Walker placed a knife in his hand, placed sofa pillows on the floor and told her to lie on them. He removed her shorts, took off his own clothes, and then raped her. After-wards, she ran upstairs to take a bath and then went to school. When she came home from school, she told her mother what had happened; she testified that she thought her mother was going to talk to Mama Dorty about it, but she did not know if her mother did.
The victim further testified that when she was about nine years old, Walker picked her up, held her tight, and pushed her down toward his penis. She further testified that after this incident, Walker asked her to feel his penis and became angry when she refused to do so. After-wards, he began coming into her room at night and would put his fingers in her vagina. When she was twelve years old, she, along with her sister D.C., first told her mother about what Walker was doing. She 1 ¿testified that when her mother asked Walker about it, he denied doing it and stopped doing anything for a while.
Thereafter, Walker started coming into her room again and would perform oral sex. She also stated that he began putting his penis in her vagina and that he did this two or three times a week. She again told her mother, and Walker denied it again. Although he stopped for a little while, he started again and used knives on her because she was fighting with him. She again told her mother for the last time on April 4. The victim did not accuse Walker of rape, but she wanted him out of the house because he abused drugs, verbally and physically abused her mother, and stole from them.
A.W., Walker’s wife, testified that when the victim was twelve, the victim told her *738 that Walker had “messed” with her and had put his “thing” in her. A.W. confronted Walker, but he denied that anything happened between him and the victim. When the victim was fourteen, the victim again told her that Walker was having sex with her. When A.W. confronted Walker a second time, he admitted having sex with the victim because his sexual relationship with A.W. was getting worse.
A.W. conceded that Walker had hit her, he had taken drugs, and money from her. She testified that the victim told her a third time about what defendant was doing and that she then went to Mama Dorty, the “landlord,” the very next day to tell her what had happened. She later went to the police station where she spoke with Detective Lorenzo. A.W. testified that she was arrested for being an accessory after the fact when she told Lorenzo about the victim’s previous reports to her. She testified that she pled guilty to the charge and was placed on three years probation.
|sWalker testified and denied raping his stepdaughter. He admitted that he had a serious drug problem and that he would feel “paranoid” when he was on drugs.

ERRORS PATENT

A review of the record shows no errors patent.

ADMISSIBILITY OF EVIDENCE

In his first assignment of error, defendant complains that the trial court erred in failing to limit the evidence introduced by the State to those facts and circumstances that allegedly occurred before the victim’s twelfth birthday. He asserts that the State’s responses to the bill of particulars indicated that the only provision of the aggravated rape statute under which defendant was being prosecuted was that the victim was under twelve years old. He argues that because the State specified that provision of La. R.S. 14:42 as applicable, the State could not bring in evidence that the defendant used a knife to force the victim to have intercourse with him.
In State v. Barrow, 98-0374, p. 4 (La.App. 4 Cir. 11/25/98), 724 So.2d 263, 265, this Court stated:
In criminal prosecutions, “an accused shall be informed of the nature and cause of the accusation against him.” La. Const. Art. I, § 13. The bill of particulars provided for in Article 484 of the Code of Criminal Procedure is a means by which a defendant is so informed. State v. DeJesus, 94-0261, p. 3 (La.9/16/94), 642 So.2d 854, 855. While the bill of particulars is not a means for the defendant to obtain the State’s evidence, it should inform [ the defendants the essential facts of the crime charged. Id. Therefore, if the trial court determines that the bill of information and/or bill of particulars is insufficient, it may quash the charges. La. Code Crim. Proc. Ann. art. 485. DeJesus, supra. An appellate court reviews such a ruling for abuse [fiof discretion. State v. Atkins, 360 So.2d 1341, 1344 (La.1978), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); State v. Ross, 561 So.2d 1004, 1007 (La.App. 4 Cir.1990), writ denied in part, not considered in part, 594 So.2d 885 (La.1992).
In the present case, Walker did not move to quash the indictment, but instead moved to exclude evidence of any alleged rapes occurring after the victim’s twelfth birthday. In State v. Tezano, 514 So.2d 531 (La.App. 3 Cir.1987), the defendant filed a motion to prevent the introduction of evidence that was inconsistent with the State’s responses to the defendant’s bill of particulars. The trial court denied the motion, and the Third Circuit found no error in the ruling because the defendant failed to demonstrate how he was prejudiced or surprised by the variance.
The indictment stated that the offense occurred from June 14, 1989 through April 5, 1995. In the bill of particulars, Walker asked the State, in question 2, for the exact date and time of the offense. In questions 3 and 4, he asked upon what *739 statute the prosecution was based and to specify under which section, part, or paragraph the prosecution was based. Walker asked in question 5 if any weapon was used and if so, what type of weapon it was; and, in question 8, he asked for the age of the victim. The State answered question 2 with the dates set forth in the indictment, June 14, 1989 through April 5, 1995. The response to question 3 was “14:42,” and the response to question 4 was “La. R.S. 14:42(4).” The State answered question 5 in the affirmative and stated that the weapon was a knife. The response to question 8 was “DOB 6-14-80.”
It does not appear that the trial court erred by allowing the State to enter testimony regarding Walker’s actions with the victim prior to her twelfth birthday. The dates set forth in the indictment and the bill of particulars include offenses |7both before and after the victim’s twelfth birthday. Walker was informed of the date of the victim’s birth in the bill of particulars, and the bill of particulars also informed him that a knife was used in the commission of the offense. Thus, he was fully informed of the essential facts of the crime charged. Accordingly, this assignment of error is without merit.

HABITUAL-OFFENDER STATUS

In this assignment of error, Walker complains that the trial court erred in finding him to be a second-felony offender because the evidence was not sufficient to support the court’s decision. First, he argues that the State failed to prove that he was advised of his rights when he pleaded guilty to the predicate offense because the minute entry did not specify the rights of which he was informed. Secondly, he argues that the State failed to prove that the cleansing period did not elapse because there was no evidence as to the defendant’s release date. Thirdly, he argues that the State failed to show that his guilty plea to the predicate offense was knowingly and voluntarily entered.
The multiple bill was based on a 1982 conviction for simple burglary for which Walker was sentenced to three years at hard labor, suspended, and three years of active probation, with the condition that he serve six months in Parish Prison. In support of the multiple bill, the State introduced the bill of information, the minute entry for the guilty plea, the minute entry for sentencing, a waiver of rights form with Walker’s signature or initials, as well as fingerprint evidence.
As it relates to the cleansing period, La. R.S. 15:529.1(C) provides:
This section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the | scommission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
The statute refers to the time of the commission of the last felony for which the defendant has been convicted; and, in the present case, that date is June 14, 1989. (Emphasis ours). Because this date is less than ten years from the time Walker was convicted on the predicate offense, the State has established that the cleansing period had not elapsed.
Walker’s other two complaints concerning the multiple bill are interrelated as they both deal with whether the evidence established that he was advised of his Boy-kin rights and whether he knowingly and voluntarily entered a guilty plea to the predicate offense. La. R.S. 15:529.1(D)(l)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original *740 burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything |9less than the “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must then weigh the evidence submitted by the defendant and the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights. (Footnotes omitted).
The waiver of rights form signed by Walker stated that he understood that he had a right to trial and appeal and that by pleading guilty, he was waiving his right to trial and appeal. There is an illegible handwritten notation above the word trial. The form further stated that Walker was waiving his right to confront and cross-examine the witnesses who accuse him; his right to compulsory process to require witnesses to appear and testify for him; and, his privilege against self-incrimination. Walker, his attorney, and the trial judge subsequently signed the form.
There are two minute entries in the record, one of which deals with the sentencing phase for Walker on May 21, 1982, and the other which is the March 5, 1982 guilty plea of Chester Mason, Walker’s co-defendant on the simple burglary charge. The present record does not contain the minute entry from Walker’s guilty plea on May 13, 1982, the date Walker signed the waiver of rights form. More importantly, it does not appear that anyone has noticed that the guilty plea minute entry was for the co-defendant and not Walker himself. A reading of the transcript of the multiple bill hearing held on January 29, 1999, indicates that the March 5, 1982 minute entry was the one that was introduced into evidence by the State without objection.
Because the record does not contain either a minute entry or the transcript of the guilty plea, the only evidence in the record indicating that Walker was advised Imof his Boykin rights is the waiver of rights form. The printed portion of the form shows that he was advised of his right to a trial; however, there is no indication that Walker was advised of his right to be tried by a jury. However, as noted previously, there is a handwritten notation above the word trial that is not particularly legible. Thus, it appears that Walker was not adequately advised of his Boykin rights based on the waiver of rights form. The notation on the form is deemed to be too illegible to constitute an adequate advisement of defendant’s right to a jury trial under Boykin; thus, the State has failed to establish that Walker made a knowing and voluntary guilty plea. Further, because Walker did not initial the inscription, we do not know when it was placed of record. Consequently, his adjudication as a second offender is vacated, and the case is remanded to the trial court for a new multiple bill hearing.

EXCESSIVE SENTENCE

In his third and final assignment of error, Walker complains that his sentence *741 is excessive. He argues that his sentence of twenty years as a second offender is disproportionate to the severity of the crime and imposes needless pain and suffering. He also contends that the trial court failed to justify the imposition of the twenty year sentence as required by La. C.Cr.P. art. 894.1.
Walker was convicted of forcible rape, which has a sentencing range of five to forty years at hard labor, with at least two years of the sentence without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:42.1(B). Because he was found to be a second-felony offender, the sentencing range was twenty to eighty years. See La. R.S. 15:529.1(A)(l)(a). Therefore, Walker received the minimum sentence recommended under the statute.
¡^Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Short, 96-2780 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, writ denied 99-0198 (La.5/14/99), 745 So.2d 11. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
In the present case, the trial court gave no reasons for the sentence imposed. A remand for more complete compliance with Article 894.1 is not required when the sentence imposed is not apparently severe and is in the lower range of the sentencing scale. See State v. Jones, 412 So.2d 1051 (La.1982); State v. Hardy, 98-25 (La.App. 5 Cir. 5/13/98), 715 So.2d 466; State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311. Because the trial court imposed the minimum sentence and the said sentence is not apparently severe, there is no need for a remand for compliance with Article 894.1.
|32As to whether the sentence is excessive, Walker has not presented any competent evidence to rebut the presumption that the twenty-year minimum sentence he received as a second offender was constitutional. He has offered nothing more than a conclusory argument that the sentence is excessive without pointing to any facts that would show that the sentence is excessive. Accordingly, the sentence imposed was not excessive, and this assignment of error is without merit.

DECREE

For the foregoing reasons, Gregory Walker’s conviction of forcible rape is affirmed. However, his sentence as a multiple offender is vacated and the matter remanded for resentencing in compliance with this opinion.

CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.

. Because of the nature of the offense and the victim's age, her name will not be used in this opinion.

. This witness’ name will also not be used in this opinion.

. Again, all of the names for the witnesses’ have been omitted because of the nature of the crime.