960 So.2d 1105 (2007)
STATE of Louisiana
v.
Felton D. LAGARDE.
No. 07-KA-123.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2007.
*1108 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Donald Rowan, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Gwendolyn K. Brown, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
THOMAS F. DALEY, Judge.
Defendant, Felton D. Lagarde, appeals his conviction for armed robbery, a violation of LSA-R.S. 14:64. On appeal, he assigns five errors of the trial court:
1. The trial court erred by denying the Motion for Mistrial.
2. The trial court erred by denying the Motion for New Trial.
3. The trial court erred by imposing an excessive sentence.
4. The trial court erred by failing to comply with the sentencing mandates of La.C.Cr.P. art. 894.1.
5. Defendant-appellant was denied the effective assistance of counsel as a result of his counsel's failure to file a motion to reconsider sentence to preserve for appellate review his right to object, on specific grounds, to the excessiveness of his sentence.
After careful consideration of the law and evidence, we affirm defendant's conviction, *1109 and remand for further proceedings.
FACTS
On August 3, 2004, at approximately 11:00 p.m., the victim, Tina Sage, left her employment at Wynhoven nursing home. She drove her Toyota 4-Runner to pick up her son, who was visiting friends in the Beachgrove neighborhood in Westwego, where they used to live. She looked for her son at Brother's, which is a food market near the Beachgrove neighborhood and which is where he normally waited for her.
Because her son was not at Brother's, Ms. Sage drove into the neighborhood. Ms. Sage saw her son at the back of the parking lot. She also saw a man standing on the sidewalk. Ms. Sage's son put some clothing and other belongings into the vehicle, when the man who had been on the sidewalk asked if Ms. Sage would give him a ride out of the neighborhood. When Ms. Sage told him that her boyfriend was "up front," he pushed her son out of the vehicle and jumped inside.[1] The man put a gun to her head and told her to get out. Ms. Sage said she heard a "click" and saw something silver in her face. She got out of the car and ran toward a neighbor's house and called the police. Ms. Sage testified that someone called her cell phone and told her to tell the police that the "boy's name was Felton Lagarde, and he's probably heading to the St. Bernard Project."
At trial, Detective Russo of the Jefferson Parish Sheriff's Department identified State's Exhibit 22 as the application for a search warrant of the defendant's property at the Jefferson Parish Correctional Center. The search warrant application contains background information leading up to the defendant's arrest by Jefferson Parish authorities.
The application indicates that, on August 4, 2004 at 9:00 a.m., Detective Decker of the Jefferson Parish Robbery Division discovered through a computer check that the defendant was arrested at 1:25 a.m. on August 4, 2004 in the 1000 block of St. Ann Street in New Orleans. Detectives Russo and Decker went to New Orleans at 11:00 a.m. to search for the victim's vehicle, which they found in the 800 block of Rampart Street. The vehicle was towed to the Investigations Bureau for processing. Other officers then went to pick the defendant up from New Orleans, where, in his personal property, they discovered a set of keys containing a Toyota key. It was later determined that the key belonged to the victim's vehicle. At trial, Ms. Sage identified State's Exhibit 2 as the keys that were in the 4-Runner when it was taken.
Detective Russo testified that, during the inventory of Ms. Sage's vehicle, the police found a .25 caliber Raven Arms handgun and a gray bandanna under the front passenger seat. The police also discovered a pair of black jeans in the back of the vehicle.
When Ms. Sage obtained her vehicle later that week, she discovered that her son's T-shirt and shorts were missing. She also noticed the clothing in the back seat, but both of her sons told her it was not theirs. She also found a crack pipe, or an "iron thing" with several lighters in her car. She placed everything inside of a bag and brought it to the police station. Ms. Sage described her son's missing clothing to the police. Detective Russo recalled that the defendant had been wearing a similar outfit at the time he was booked in New Orleans.
*1110 On September 22, 2004, the police executed a search warrant on the defendant's possessions at the Jefferson Parish Correctional Center and found some clothing, which Ms. Sage identified at trial as the clothing that her son was placing inside her car immediately before the armed man jumped inside.
Ms. Sage testified that she did not get a good look at the armed man and could not identify anyone from a photo lineup. She also was unable to make a positive identification of the defendant at trial.
On August 4, 2004, the defendant made a tape-recorded statement to Sergeant Larry Dyess of the Jefferson Parish Sheriff's Office after being advised of and waiving his rights.[2] In his statement, the defendant said that he and a white female had been smoking crack in the crack house in an abandoned area in the back of Beachgrove.[3] The defendant said that he and the woman left the house at the same time, and he asked her for a ride. The woman refused and said something about her husband. The defendant said her refusal made him feel frustrated. The defendant entered the back seat and grabbed the keys and he "tussled" with her after he entered the car. When the woman jumped out, the defendant sat in the driver's seat and drove away. The defendant said he had a gun in his pocket, but he denied pointing the gun at the woman. The defendant said he drove across the river and went downtown.
Sergeant Dyess testified he believed the defendant minimized his involvement in the crime, but stated that the police believed the defendant was the perpetrator because the defendant supplied facts that only the perpetrator would know.
ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
In these Assignments of Error, the defendant contends that the trial judge should have granted his Motion for a Mistrial and thereafter, his Motion for a New Trial because the State introduced inadmissible evidence of other crimes. Specifically, the defendant contends that a mistrial was warranted when the jury viewed an edited version of the defendant's statement that failed to omit a reference to the defendant's arrest for second degree murder. The defendant filed a Motion for a New Trial on the same basis. The State responds that the defendant failed to preserve this claim for appellate review because he viewed the statement before the jury saw it and made no objection. The State further responds that the trial judge did not abuse his discretion in denying either motion.
Immediately before questioning Sergeant Dyess about the defendant's statement, the prosecutor initiated a bench conference that was not transcribed. However, it is clear from the record that the purpose of the bench conference was to remove references in the statement to the defendant's arrest for second degree murder. After the bench conference, the State moved to introduce the complete transcribed statement (S-25) and the tape-recorded statement. The defendant stated he had no objection, other than his objection at the suppression hearing. The State then moved to introduce the edited transcribed statement (S-25A) for "record purposes," to which the defendant voiced no objection.
*1111 Thereafter, the court informed the jury that there were some "things" in the audio tape and the transcribed statement that had been removed because they were inadmissible. The prosecutor then distributed copies of the edited statement to the jury and began to play the tape.[4]
When the prosecutor, Mr. Rowan, realized that there was a reference to the second degree murder arrest that had not been deleted, he said to turn off the tape.[5] The prosecutor pointed out the reference to the defendant's attorney, Mr. Benz, who then moved for a mistrial. The attorneys approached the bench, where there was further discussion:
MR. ROWAN:
I listened to it, I just didn't catch it. I took everything else out. That's what happens when you're doing it by yourself.
What do you want to do, Judge?
THE COURT:
I don't think I have any choice.
MR. BENZ:
I apologize, I should have caught it, but I didn't.
THE COURT:
If it wouldn't have been  if it wasn't in this, I think it would be all right, because I didn't hear what he said.
Well, it's in here, I'm going to have to grant his motion.
MR. BENZ:
I apologize, Donnie, I mean, I should have caught it.
MR. ROWAN:
That's why I wanted to take the jury out so we could go over it. I should have insisted on that. But, I didn't catch it.
The jury was removed from the courtroom while the attorneys argued the mistrial motion. The defendant stated that he had filed a motion to have references to second degree murder removed from the statement, but admitted that one reference was overlooked by the defense and the State as follows:
MR. BENZ:
Unfortunately, both the tape and the written transcript, both myself and the . . . Assistant District Attorney missed the fact that one, two three four paragraphs down on the statement it says, Okay and did I advise you [that] you were under arrest for second degree homicide? It wasn't clear on the tape, but the jury has seen the statement, they have been given a copy of the statement, and I'm sure as the tape was played, they followed along and read, and they had to read the fact that he was arrested for second degree homicide in this matter, and I'd ask for a mistrial.
The prosecutor responded that it was unknown whether or not the jury read along and that any error would be harmless in any event because of the judge's prior instruction to the jury. The prosecutor pointed out that he had asked if there were any problems with the evidence before it was introduced and the defendant voiced no objection. The trial judge stated that he did not hear the reference in the audio tape and said he did not know how far along the jury had read. Thereafter, the prosecutor reiterated that the defendant had not voiced any objection when *1112 they had approached the bench prior to playing the tape and the defendant agreed:
MR. ROWAN:
I would still, if the Court would admonish them, I believe that would be enough, because as I said, prior to playing the tape I asked to approach to see if there was [sic] any problems with anything, and there wasn't any, so.
MR. BENZ:

Well, that's  what the D.A. says is true, and I read through the statement and my concern was more that it stopped at page 4, or page 5, back here, and I didn't see that, so you know, I missed it. But, you know, I don't think an admonishment will work, will do, I mean, they're going to know that he's arrested for second degree homicide, and the fact that an admonishment of them putting that out of their head, I don't think is going to happen.
(Emphasis added).
Thereafter, the trial judge denied the mistrial motion and admonished the jury as follows:
THE COURT:
. . . .
Ladies and gentlemen, I don't know how far you got to reading along with that statement, but there was something in there that doesn't pertain to this case. If you read that part of it, you are to completely disregard anything that doesn't involve this charge of armed robbery that we're trying today. All right?
All right. Get to your right spot.
The tape was played, but no transcripts were handed out to the jury.[6]
The State contends that the defendant is not entitled to review of these assignments because he voiced no objection after reviewing the statement at the bench. To preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection.[7] The purpose of the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. This prevents the defendant from gambling for a favorable verdict at trial and then later utilizing appellate review to correct errors that might easily have been corrected by the trial judge.[8]
Although the defendant read the redacted statement and voiced no objection before it was played or shown to the jury, he moved for a mistrial as soon as the issue was brought to his attention. Accordingly, the question of whether or not the trial judge erred in denying the *1113 mistrial is properly before this Court on appeal.
On appeal, the defendant contends that the trial judge was required to grant a mistrial under Article 770. The State contends that the trial judge had the discretion to deny a mistrial under Article 771 because the remark was not made in the hearing of the jury. Rather, according to the State, the issue was whether the jury read, not heard, the reference to the defendant's arrest. Since Article 770 pertains to remarks made within the hearing of the jury, the State contends Article 770 is inapplicable.
A direct or indirect reference to a crime committed or alleged to have been committed by a defendant, as to which evidence would be inadmissible and made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument requires a mistrial on motion of the defendant.[9]
As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a "court official." However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial.[10]
In the instant case, the remark was not made by the prosecutor, the judge, or a court official. Further, there is no showing that the prosecutor purposefully introduced the complained of evidence. In fact, the record reflects that both the defendant and the prosecutor inadvertently overlooked the reference in the defendant's statement that the defendant had been arrested for "second degree homicide." Therefore, it appears Article 770 is not applicable.
LSA-C.Cr.P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.[11] According to LSA-C.Cr.P. art. 775, "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when *1114 prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."
Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a Motion for Mistrial will not be disturbed on appeal absent an abuse of that discretion.[12]
In the instant case, the record does not reflect whether the jury had heard or saw the reference to the defendant's unrelated arrest. However, even if the jury read or heard the brief reference to the defendant's "second degree homicide" arrest, any error that occurred was harmless. An impermissible reference to other crimes is subject to a harmless error analysis.[13] The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error.[14]
In the present case, Ms. Sage's testimony was unwavering in her account of the incident in which her vehicle was taken at gunpoint. Although Ms. Sage could not identify the defendant as the perpetrator, he was arrested the next day wearing the clothing that her son had just put into the vehicle before it was stolen. And Ms. Sage's keys were in his possession when he was arrested. Further, the defendant admitted that he drove away in the vehicle while armed with a gun, although he denied that he displayed the gun to take the vehicle.
Considering the evidence against the defendant, the guilty verdict was not attributable to any error in the jury's viewing or hearing the portion of the defendant's statement that referred to his second degree homicide arrest. Accordingly, the trial judge did not err in denying the Motion for Mistrial.
The defendant also contends that the trial judge erred in denying his Motion for a New Trial made on the same basis. Pursuant to LSA-C.Cr.P. art. 851, "the motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." The ruling on a Motion for New Trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion.[15] Since it does not appear that the defendant was prejudiced by the brief reference to his unrelated arrest, it does not appear that the trial judge erred in denying the Motion for a New Trial. Accordingly, the trial judge did not abuse his discretion in denying the defendant's Motion for Mistrial or Motion for a New Trial.
ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends that his 99-year sentence is excessive because the trial judge failed to articulate any reasons for the sentence. The State responds that the record supports the sentence.
In this case, the defendant concedes his attorney failed to file or make a Motion to Reconsider Sentence. According to LSA-C.Cr.P. art. 881.1(E), the "fflailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider *1115 sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." Generally, the defendant's failure to make a specific objection at the time of sentencing or to file a written Motion to Reconsider precludes review of a sentence on appeal.[16] However, this Court routinely reviews sentences for constitutional excessiveness even absent a defendant's compliance with Article 881.1.[17] Therefore, the defendant's sentence is reviewed for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering.[18]
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence.[19]
In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.[20] The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence.[21]
The defendant was convicted of armed robbery, which is punishable by imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64(B). The trial judge imposed the maximum sentence as follows:
THE COURT:
Mr. Lagarde, you've been convicted by a jury of armed robbery. You have a terrible record, you have many previous convictions, so on this case the Court is going to sentence you to ninety nine [sic] years in the custody of the Department of Corrections, giving you credit for time served. Without benefit of probation, parole, or suspension of sentence.
Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged, and the worst type of offender.[22] Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant.[23]
*1116 Although he was just 22 years old at the time of the instant offense, the record reflects the defendant was classified as a "Code 6"[24] adult and juvenile offender and that he had two prior convictions. During the suppression hearing, the defendant admitted that he had prior convictions for simple burglary and for unauthorized use of a vehicle.
Our state's jurisprudence reflects that the maximum penalty for armed robbery has been imposed under similar circumstances. In State v. Douglas,[25] the Louisiana Supreme Court found a 99-year sentence was not excessive for a defendant who robbed the victim at gunpoint when he responded to the defendant's knock on his door. The defendant pushed a pistol into the victim's stomach, entered the house, and ordered the victim to hand over his wallet.[26] The defendant had two prior convictions for simple burglary and one for possession of heroin, as well as other less serious convictions.[27]
The Douglas court recognized the seriousness of a 99-year sentence, but found the judge did not abuse his discretion as follows:
This court does not lightly consider the matter of a 99-year sentence imposed without hope of release on parole. There may be sound arguments against the frequent use of such sentences, but these arguments address themselves to the reasoned discretion of the sentencing judge. The function of the reviewing court is not merely to substitute this court's judgment for that of the trial court, but to determine whether the court below manifestly abused its discretion. In this case we cannot find such abuse.
Douglas, at 1267-1268.
Citing Douglas, this Court, in State v. Jack,[28] held that a 99-year sentence was not excessive where the 20-year-old defendant robbed a snowball stand with an inoperable gun. The Jack court noted that the victim and the apprehending officer were placed in fear of bodily harm and both believed the gun to be loaded. This Court noted that other people, including the defendant, could have been harmed if anyone had attempted to intervene in the situation. The defendant had an extensive and serious juvenile record with numerous adult arrests and adult convictions for theft and burglary.[29]
In State v. Falkins,[30] this Court recognized a review of the jurisprudence revealed that 99-year sentences imposed upon defendants convicted of armed robbery had been previously upheld in many cases, including cases in which the victims were not physically injured.[31] The Falkins court held that three concurrent 99-year sentences and one 110-year enhanced sentence were not excessive, where four bank tellers were robbed at gunpoint.[32] The Falkins court noted that the defendant *1117 and his companion created the risk of death and great bodily harm to the employees and customers who were in the bank at the time of the robbery. See also, State v. Weeks,[33] where the court held a 99-year sentence was not excessive for a defendant who robbed a bank teller at gunpoint, and State v. Wilson,[34] where the court found a 99-year sentence was not excessive for a defendant who robbed the victim at gunpoint, in light of the defendant's extensive arrest record and prior convictions.
Armed robbery has been recognized as a serious offense against the person.[35] Herein, the defendant pushed the victim's son out of the vehicle and ordered Ms. Sage out of her vehicle at gunpoint, placing the lives of Ms. Sage and her son at risk of death or great bodily harm.
The Louisiana Supreme Court has stated that the question on review is not whether another sentence would have been more appropriate, but whether the trial court abused its broad sentencing discretion.[36] While another judge might have weighed the circumstances in this case differently, the question on review is whether the trial judge abused his discretion in this case, not whether another sentence might have been more appropriate.[37] We find that the trial judge did not abuse his discretion in sentencing Lagarde.
ASSIGNMENT OF ERROR NUMBER FOUR AND FIVE
In these assignments, the defendant argues that his attorney was ineffective because he failed to file a Motion to Reconsider on the basis that the trial judge did not articulate a basis for the sentence pursuant to LSA-C.Cr.P. art. 894.1. The State responds that the failure to file a Motion to Reconsider Sentence did not result in ineffective assistance of counsel.
A claim of ineffective assistance of counsel is most appropriately addressed through an Application for Post-Conviction Relief rather than direct appeal, so as to afford the parties an adequate record for review.[38] Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, may it be addressed in the interest of judicial economy.[39] In the present case, the record is adequate to address defendant's claim in this regard.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution of 1974. When a defendant raises a claim of ineffective assistance of counsel, that claim is evaluated under the two-prong test established Strickland v. Washington.[40] The defendant must show (1) that defense counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. To show prejudice under this test, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct.[41]
*1118 The mere failure to file a Motion to Reconsider Sentence does not in and of itself constitute ineffective assistance of counsel.[42] However, if a defendant can "show a reasonable probability that, but for counsel's error, his sentence would have been different," a basis for ineffective assistance claim may be found.[43]
Because the defendant did not file a Motion to Reconsider Sentence, he is not entitled to a review of his argument concerning the trial court's non-compliance with Article 894.1, which falls under the category of statutory excessiveness.[44] However, because the defendant contends that his trial attorney was ineffective by failing to properly preserve this claim for review under LSA-C.Cr.P. art. 881.1, the defendant's complaint in this regard is addressed here.[45]
Louisiana Code of Criminal Procedure Article 894.1(C) requires the trial judge to state for the record the considerations taken into account and the factual basis when imposing sentence.[46] But, when there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in LSA-C.Cr.P. art. 894.1 does not require a remand for resentencing.[47]
The trial judge's reasons, recited above, are similar in scope to the trial judge's reasons in State v. Douglas, supra, which are as follows:
Okay, the court has satisfied itself with having looked at the rap sheet of the defendant, and the previous convictions involved in this man's criminal history, and the court is satisfied that Mr. Douglas is, in the court's opinion, an incorrigible, violent criminal, and at this point the court will sentence Mr. Charles R. Douglas, also/known/as Robert Charles Douglas, or whatever the case may be, to the Louisiana Department of Corrections to serve, at hard labor, a period of time in the amount of ninety-nine years, and will remand the prisoner for the execution of that sentence. May God bless your soul. Okay, remand the prisoner. And that's without the probation or parole or suspension of sentence.[48]
The Douglas court stated, "[d]espite the brevity of his reasons, the trial judge adequately complied with the sentencing guidelines in C.Cr.P. art. 894.1." The Douglas court accepted the trial judge's assertion that he based the lengthy sentence on the defendant's prior criminal history and the violent manner in which the defendant perpetrated the offense in question. Based on Douglas, the trial judge's reasons in the present case demonstrate adequate compliance with the sentencing guidelines in Article 894.1.
The record contains a factual basis for the sentence imposed, as discussed in the preceding assignment involving the constitutional excessiveness of the sentence. The defendant has not shown a reasonable probability that, but for his attorney's failure to file or move for reconsideration of his sentence, his sentence would have been different. As such, the defendant has failed to show ineffective assistance of counsel. This Assignment of Error has no merit.
*1119 ERROR PATENT DISCUSSION[49]
Although the commitment reflects that the trial judge informed the Lagarde of the prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8(C), the transcript does not so reflect. When there is a conflict between the transcript and the commitment, the transcript controls.[50] Therefore, the matter is remanded for the trial judge to inform the defendant of the prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and by filing written proof in the record that the defendant received the notice.[51]
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] It appears from the context of Ms. Sage's testimony that she meant in the front of the neighborhood.
[2] At a bench conference, the statement was redacted to omit references to the defendant's arrest for second degree murder. However, one reference was overlooked and the defendant moved for a mistrial. This is the subject of the first two assignments.
[3] The police report reflects that the victim was a white female.
[4] The record does not reflect how long the tape played before the prosecutor said to turn it off. Rather, the record reflects, "THE TAPE WAS STARTED AND TURNED OFF."
[5] The transcript of the redacted statement reflects that Sergeant Dyess asked the defendant if he had been advised that he was "under arrest for Second Degree Homicide and that [he was] under investigation in reference to Armed Robbery?"
[6] For purposes of accuracy, it is noted that there are several aspects of the defendant's brief that are not supported by the record. The defendant asserts that the judge had made a pre-trial ruling to preclude any references to the second degree murder charge. However, the record contains no pre-trial motion or ruling on this matter. The defendant also asserts that he objected as soon as the portion of the tape containing the inadmissible reference was played. However, the record reflects that the prosecutor stopped the tape, brought the matter to the defendant's attention, and then the defendant moved for a mistrial. Finally, the defendant asserts that the State apologized for the error, when the record reflects that it was actually the defendant's attorney who apologized to the prosecutor for overlooking the reference.
[7] See LSA-C.Cr.P. art. 841(A); State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294.
[8] State v. Williams, 04-608 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559.
[9] See, LSA-C.Cr.P. Art. 770(2); State v. McGuffey, 486 So.2d 1101, 1107 (La.App. 2 Cir.1986).
[10] State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, 866, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783.
[11] State v. Paul, 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 352.
[12] State v. Paul, supra.
[13] State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102; State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 785, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
[14] Id.
[15] State v. Badeaux, 01-618 (La.App. 5 Cir. 11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
[16] State v. Fisher, 03-326 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1084, writ denied, 03-2545 (La.5/14/04), 872 So.2d 510.
[17] State v. Fisher, supra.
[18] State v. Lobato, 603 So.2d 739, 751 (La. 1992).
[19] State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879.
[20] State v. Allen, 868 So.2d at 880.
[21] State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192.
[22] State v. Guzman, 95-444 (La.App. 5 Cir. 11/15/95), 665 So.2d 512, 516, writ denied, 95-2853 (La.2/28/96), 668 So.2d 366.
[23] State v. Washington, 414 So.2d 313, 315 (La.1982); State v. Lemon, 06-721 (La.App. 5 Cir. 1/30/07), 951 So.2d 1177, p. 4.
[24] A reference used by the Jefferson Parish Sheriff's Office for "career criminals." See also State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812; State v. Pierce, 02-1267 (La.App. 5 Cir. 4/8/03), 846 So.2d 55; State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346.
[25] 389 So.2d 1263 (La.1980).
[26] Id. at 1264-1265.
[27] Id. at 1267.
[28] 448 So.2d 725 (La.App. 5 Cir.1984).
[29] Id. at 728.
[30] 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 906, writs denied, 04-2220 (La.1/14/05), 889 So.2d 266 and 04-2171 (La.5/20/05), 902 So.2d 1045.
[31] Id. at 912.
[32] The defendants initially received four 99-year sentences, but also received an enhanced, 110-year sentence on one of the counts as second felony offenders, to be served concurrently with the three 99-year sentences. Id. at 912.
[33] 449 So.2d 1158, 1159, 1161 (La.App. 2 Cir.1984).
[34] 452 So.2d 773, (La.App. 4 Cir.1984)
[35] See, State v. Francois, 01-807 (La.App. 5 Cir. 4/10/02), 817 So.2d 213, 216.
[36] State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133.
[37] See, State v. Jones, supra.
[38] State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816.
[39] Id.
[40] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[41] Strickland v. Washington, 466 U.S. at 687, 104 S.Ct at 2064.
[42] State v. Fairley, supra.
[43] Id.
[44] State v. Fairley, citing State v. Balser, 01-317 (La.App. 5 Cir. 7/30/01), 792 So.2d 156, 158.
[45] See, Fairley.
[46] State v. Sanders, 98-855 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1279, writ denied, 99-1980 (La.1/7/00), 752 So.2d 175.
[47] Id.
[48] Douglas, 389 So.2d at 1267, fn. 3.
[49] The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[50] State v. Lynch, 441 So.2d 732 (La.1983).
[51] See, State v. Hutchinson, 02-60 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.