WINDHORST, J.
Defendant, Brian Rodas, appeals his convictions and sentences for armed robbery in violation of La. R.S. 14:64 (count one); possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count two); and attempted simple escape in violation of La. R.S. 14:110 and La. R.S. 14:27 (count three).[1] For the reasons that follow, we affirm defendant’s convictions and sentences and remand for correction of the commitment.
FACTS
On October 13, 2014, Karlene Dealune, an elderly, retired widow, was at her home at 4053 Deerpark Drive in Harvey, when she heard a knock on the door. Thinking it was her daughter, she opened the door and saw a young man, later identified as the juvenile co-defendant, L.L.[2] The young man, L.L., told her that his car had broken down and asked if he could call his mother. Ms. Dealune allowed him to come inside because she was kindhearted and would have wanted someone to help her grandson if he was in the same situation. Once inside, the young man demanded her money. She told him that she did not have any money, but he picked up her purse and told her to give him her money. Ms. Deal-une gave him $25.00 and the young man pulled out a gun, aimed it at her, and told her that he wanted more money.
As L.L. was pointing the gun at Ms. Dealune, a heavyset man, who was wearing a scarf/mask over the lower part of his face and a hat, later identified as defendant, walked inside her house and went down the hallway. The young man with the gun demanded Ms. Dealune’s debit and credit cards, but she refused. He then told her that if she did not give him her debit card PIN number, he would kill her. Defendant told L.L. not to kill Ms. Dealune, and carried two flat screen televisions and a computer out the front door. Ms. Deal-une ultimately gave L.L. her debit card PIN number,
L.L. subsequently demanded that Ms. Dealune give him the rings on her fingers. She told L.L. that she could not get them off, and he told her that she had better get them off, and made her run her fingers under water until he could pull them off. L.L. and defendant then took Ms. Deal-une’s purse[3] and left in a beige colored car. Ms. Dealune called 9-1-1 to report the robbery. She was later notified by her bank that the robbers used her debit and/or credit cards at three ATM machines and two Game Stop stores. Defendant and L.L. withdrew $200.00 from each ATM machine and bought a PlayStation 4 (PS4), warranty, and accessories at one Game Stop and attempted to purchase a cell phone at the other Game Stop, where *522 Ms. Dealune’s card was declined. At trial, Ms. Dealune identified a photograph of defendant at the Game Stop,[4] as the heavy set man who robbed her, and identified defendant in the court room as one of the perpetrators.
In his first counseled assignment of error, defendant contends the trial judge erred by denying defense counsel’s motion for mistrial after the prosecutor made improper comments regarding possible other crimes evidence during cross-examination of defendant. He argues the prosecutor’s comments inferred that he was a serial armed robber in violation of La. C.Cr.P. art. 770(2) because the prosecutor’s comments indirectly insinuated that another crime had been committed by him which was not admissible. Defendant contends there was no evidence in the record that he had previously robbed anyone. Thus, declaration of a mistrial should have been mandatory and the trial court’s admonition to the jury was not sufficient to prevent a mistrial. Defendant further argues that this error was not hamless because no evidence was admitted to establish that he committed a prior robbery.
The record reflects that during the cross-examination of defendant, the following exchange occurred:
MR. FORTUNATO (prosecutor):
Q. I mean had you ever done anything like this before, just take people’s stuff, stuff that isn’t yours?
A. Never.
Q. You’ve never been involved in anything—I mean you—
A. Never.
MS. SHEPPARD (defense counsel):
Your Honor, objection.
MR. FORTUNATO:
Q. You almost seem accustomed to it.
MS. SHEPPARD:
Your Honor, objection.
BY MR. FORTUNATO:
Q. Would you be surprised to know that I’m shocked that you would suggest that you are not accustomed to this kind of behavior?
MS. SHEPPARD:
Objection. Approach, Your Honor.
MR. FORTUNATO:
I’ll withdraw the question.
MS. SHEPPARD:
No. Let’s approach.
At the bench conference, defense counsel moved for a mistrial, arguing the prosecutor knew he could not refer to any alleged prior bad acts. She contended this line of questioning was completely inappropriate. The prosecutor withdrew the question, and defense counsel responded that the question was already out there. The prosecutor stated defendant did not answer the question, and the trial judge agreed. The trial judge offered to tell the jury to disregard the comments made by the prosecutor and defense counsel replied, “That’s fine. But my objection—.” The trial judge denied the motion for mistrial and admonished the jury, striking the last comments made by the prosecutor, *523 and informing the jury not to consider the comments in any way. The trial judge reminded the jury that statements made by the attorneys and the prosecutor were not evidence, and they could not be considered.
Generally, evidence of other crimes committed by a defendant is inadmissible at trial due to the risk of grave prejudice to the defendant. State v. Williams, 01-1007 (La.App. 5 Cir. 02/26/02), 811 So.2d 1026, 1030.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when’ prejudicial conduct in or outside the courtroom makes it impossible’for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. La. C.Cr.P. art. 775. A mistrial is mandated upon a defendant’s motion, “when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to.... another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.” La. C.Cr.P. art. 770(2). An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. La. C.Cr.P. art. 770. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial. Id.
La. C.Cr.P. art. 771(1) provides that upon the request of the defendant or the state,, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create -prejudice against the defendant, or the státe, in the mind of the jury when the remark or comment is made by the judge, thé district attorney, or a court official, and the remark is not within the scope of Article 770.
To trigger a mandatory mistrial, the remark must unmistakably point to evidence of another crime. State v. Clark, 05-652 (La.App. 5 Cir. 02/14/06), 924 So.2d 282, 289, writs denied, 06-622 (La. 10/13/06), 939 So.2d 372 and 06-1175 (La. 01/12/07), 948 So.2d 138. An impermissible reference to inadmissible evidence of another crime committed or alleged to have been committed by the defendant, which is deliberately elicited by the prosecutor, is imputable to the State and triggers the rule mandating a mistrial. State v. Marsalis, 04-827 (La.App. 5 Cir. 04/26/05), 902 So.2d 1081, 1085.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to a defendant, depriving him of a reasonable expectation of a fair trial. State v. Lagarde, 07-123 (La.App. 5 Cir. 05/29/07), 960 So.2d 1105, 1113, writ denied, 07-1650 (La. 05/09/08), 980 So.2d 684. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Id. at 1114.
In the present case, .none of the prosecutor’s questions or comments or defendant’s answers unmistakably pointed to or even alluded to evidence of another crime committed by defendant. Although the prosecutor generally insinuated defendant had committed other robberies, defendant denied he had done so, and no evidence was introduced showing he committed any other robberies. The prosecutor’s questions or comments do not fall within the scope of La. C.Cr.P. art. 770, and therefore, the trial judge was not mandated to grant a mistrial. Additionally, the *524 trial judge offered to tell the jury to disregard the comments made by the prosecutor, and defense counsel agreed. The trial judge properly admonished the jury.
Nevertheless, even assuming the prosecutor’s questions or comments constituted an impermissible reference to other crimes, any such error is subject to a harmless error analysis. The test for determining if an error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. Marsalis, 902 So.2d at 1087.
Considering the overwhelming evidence presented at trial, any such error was harmless in that the verdict rendered was surely unattributable to the error. Ms. Dealune testified that on October 13, 2014, two robbers, at least one who had a gun, stole her credit and debit cards, which were used shortly thereafter at multiple ATM machines and two Game Stop stores. She further testified that they also stole her money, two flat screen televisions, a computer, and her rings. She positively identified defendant at trial as one of the perpetrators and identified defendant from a photograph taken at the Game Stop store, wherein defendant had a hat on and a searf/mask covering his mouth. The managers at both Game Stop stores, respectively, positively identified defendant as the person who purchased a PS4 and who was with the young man who attempted to purchase a cell phone.
L.L. testified he and defendant robbed Ms. Dealune while armed with guns. L.L. testified that he took a gun from the front seat of the car defendant was driving. He saw defendant put another gun in the waistband of his pants before he went into Ms. Dealune’s house. After they robbed Ms. Dealune, they left and withdrew money from three ATMs, purchased a PS4 at a Game Stop, and attempted to purchase a cell phone at another Game Stop, but the card was declined. L.L. testified that they took all of Ms. Dealune’s property to defendant’s house, split the money, and defendant kept everything taken from Ms. Dealune. L.L. testified’ that he was adjudicated guilty of the armed robbery of Ms. Dealune and was sentenced. L.L. positively identified a photograph of defendant-taken at one of the Game Stop stores and identified defendant in court as the co-perpetrator to the armed robbery of Ms. Dealune.
Defendant testified that he did not know that L.L. was going to commit an armed; robbery; rather, he thought they were going to buy marijuana. However, he admitted he went into the house and L.L. point a gun at Ms. Dealune. He testified that he was “nervous” so he took two flat screen televisions and a computer from Ms. Dealune’s house and then after leaving, he and L.L. went to an ATM. He also admitted that they went to two Game Stop stores, L.L. bought a PS4 with a debit or credit card, and he kept the PS4. While he denied he kept any of the other stolen property or had any guns in the car, or on him during the robbery, the two firearms used in the robbery and Ms. Dealune’s property were found in defendant’s residence.
Deputy Sharp testified that he executed a- search warrant at defendant’s residence and retrieved two firearms. During his trial testimony, L.L. looked at the photographs of the firearms retrieved from defendant’s residence and identified the firearms as the guns used by them in the robbery. Deputy Sharp further testified the serial number on the PS4 found during the search matched the serial number on the receipt from one of the Game Stop stores. The jury also heard a taped jailhouse phone call between defendant and an unidentified male which revealed defendant’s intimate knowledge of the armed *525 robbery and discredited defendant’s testimony that he thought they were going to purchase marijuana.
With respect to the second count of possession of a’firearm by a felon, James Perque, who was qualified as an expert in the field of latent fingerprints, identified defendant’s fingerprints on a prior felony conviction of cultivation of marijuana in case number 09-2270 in the 24th Judicial District Court in Jefferson Parish wherein defendant pled guilty on August 24,"2009. Therefore, the jury heard testimony and saw evidence of defendant’s prior conviction in 2009. Moreover, defendant testified that he had a prior felony conviction for cultivation of marijuana from 2009. A period of less than ten years had elapsed since the completion of defendant’s sentence for the cultivation of marijuana. It was undisputed that two firearms were found in defendant’s residence after the robbery and the firearms were identified by L.L, as those used during the robbery.
Additionally, for the third count of attempted escape, Sergeant Frank Renaudin and Detective Marc Macaluso testifiéd, respectively, that defendant was under arrest and handcuffed to a three or four foot chain that was connected to a floor plate located in the interview room.. At one point, the officers left the room, but the room was monitoréd by video surveillance. Sgt. Renaudin observed defendant rembve his handcuff, walk to the door, open the door, look out, and then shut the door again. Sgt. Renaudin'notified Det. Macalu-so and others that defendant was trying to get out. Officers responded and defendant was subsequently subdued. Moreover, defendant admitted and the video showed that he removed the handcuffs from his hands while in the interview room apd under arrest.
Based on the foregoing, we find that the verdicts were surely unattributable to the prosecutor’s general insinuation of other crimes, and thus, the trial judge did not err denying the motion for mistrial.
In his second counseled assignment of error and his sole pro se assignment of error, defendant argues that his ninety-seven and one-half year (97 ½) sentence is unconstitutionally excessive. Prior to trial, defendant refused the State’s offer of a plea bargain in exchange for a twenty-five-year sentence. Defendant contends that if a twenty-five-year sentence was acceptable under the facts of this case, then a ninety-seven and one-half-year sentence under these same facts is excessive. Thus, defendant argues the .severe sentence was a result of him being penalized for exercising his right to proceed to trial. He contends L.L. admitted to committing the robbery, pointing a gun at Ms. Dealune, forcing her rings off her finger, and he only received two years. He contends the trial court did not consider mitigating factors. Defendant contends his sentence should be vacated and remanded for resentencing.
The transcript reflects that on March 11, 2015, defense counsel stated defendant rejected the State’s plea deal of twenty-five years and a “no bill.” Defendant testified he understood the plea offer. The trial judge subsequently informed defendant of the sentencing range for each charge and the minimum sentence for a multiple bill, with á total minimum sentence of fifty-two years. Defendant indicated he understood all of the ’ sentencing ranges, the importance of a habitual offender bill of information, and the fact the State was willing to waive it. Defense counsel added that the maximum sentence would be one hundred ninety-eight years and she had advised defendant that these sentences would run concurrently or consecutively, with the exception of simple escape, making the minimum sentence after trial fifty-two years.
*526 Further, the trial judge advised defendant he considered a .felon in possession of a firearm conviction to be a wholly separate and distinct offense from an armed robbery conviction and he generally did not run those sentences concurrently. The trial judge stressed that defendant was facing three consecutive sentences. He asked defendant if he understood that if he did not accept the offer, the State would file a habitual offender bill against him. Defendant stated he understood and wanted to proceed with his motions and go to trial. Defendant was subsequently tried and convicted of armed robbery (count one), felon in possession of a firearm (count two), and attempted escape (count three). He filed- a motion for new trial arguing the evidence was insufficient and the State- erred in suggesting in its questioning of the defendant that he may have committed- crimes before. On May -20, 2015, the trial judge denied the motion.
The trial court then heard from Ms. Dealune who presented a victim impact statement. She stated the experience she went through was very traumatic and she continues to be affected by the incident because when anyone knocks on her door, she does not want to answer for fear of what could happen. Ms. Dealune stated she hoped defendant .got help, she .was praying for him, and she forgave him. Following her statement, defense counsel waived sentencing delays. Defendant was then sworn in and made a brief statement wherein he apologized to Ms. Dealune for what happened that day, stated he was sorry she had to go through that experience, and he was grateful she had forgiven him for what happened that day regardless of the sentence he was going to receive.
The trial judge subsequently stated he considered the testimony and other evidence presented at trial and the sentencing guidelines of La. C.Cr.P. art. 894.1. He found that the convictions required mandatory jail time, so probation would not be considered, that defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by defendant’s commitment to an institution, that any lesser sentence would deprecate the seriousness of the crime, and that defendant’s conduct during the commission of the offense manifested deliberate cruelty to Ms. Dealune. The trial judge also found defendant knew or should have known that Ms. Dealune was particularly vulnerable or incapable of resistance due to advanced age, disability, or ill health; that defendant used threats of or actual violence in the commission of the offense; that a dangerous weapon was used in the commission of the offense; and that a firearm was used in the commission of the offense. The trial judge asserted he also considered mitigating circumstances. The trial court gave extensive detailed reasons for the sentences imposed for each charge. The trial court sentenced defendant to seventy-five years for the armed robbery conviction, twenty years for the felon in possession of a firearm conviction, and two and one-half years for the attempted escape conviction, with all sentences to run consecutively. The trial judge said that as he had explained in pretrial and as was always his policy, he did not run sentences concurrently if they were separate offenses and that the felon in possession of a firearm conviction was separate and distinct from the armed robbery conviction.
The record reflects defense counsel orally objected to defendant’s sentences at the time of sentencing but did not raise an issue concerning the consecutive nature of the sentences. Defense counsel also contends for the first time on appeal that the severe sentences were the result of defendant being penalized for ex- *527 erasing his right to proceed to trial. Defendant did not make an oral,motion for reconsideration of sentence or file a written motion for reconsideration of sentence. The failure to file a motion to reconsider sentence or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for unconstitutional excessiveness. State v. Ross, 13-924 (La.App. 5 Cir. 05/28/14), 142 So.3d 327, 333. Additionally, when the consecutive nature of sentences is not,.specifically raised in the trial court, the issue is not included in the bare constitutional review, and defendant is precluded from raising the issue on appeal. State v. Jacobs, 07-887 (La.App. 5 Cir. 05/24/11), 67 So.3d 535, 593, writ denied, 11-1753 (La. 02/10/12), 80 So.3d 468, cert. denied, — U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012).
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for unconstitutional excessiveness. State v. Smith, 01-2574 (La. 01/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes'needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 09/28/04), 885 So.2d 618, 622, writ denied, 05-0244 (La. 12/09/05), 916 So.2d 1048.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its. discretion, not whether another sentence might have been more' appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 05/29/07), 960 So.2d 1127, 1130, writ denied, 08-1649 (La. 04/17/09), 6 So.3d 786. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Id.
Defendant was convicted of armed robbery in violation of La. R.S. 14:64. The trial judge imposed a seventy-five-year sentence upon defendant. The sentencing range for armed robbery is imprisonment at hard labor for ten to ninety-nine years. Defendant’s sentence is within the applicable sentencing range. See State v. Brown, 15-96 (La.App. 5 Cir. 09/15/15), 173 So.3d 1262; State v. Douglas, 389 So.2d 1263, 1264-67 (La.1980); State v. James, 545 So.2d 560 (La.App. 4 Cir.1989), writ denied, 551 So.2d 618 (La.1989).
Defendant was also convicted of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. The sentencing range for such a conviction is imprisonment at hard labor for not less than ten nor more than twenty years without the benefit of parole, probation, or suspension of sentence. Past records of drug offenses weigh heavily in the decision to uphold the imposition of maximum sentences. State v. James, 13-666 (La. App. 5 Cir. 02/12/14), 136 So.3d 113, 118; State v. Caffrey, 08-717 (La.App. 5 Cir. 05/12/09), 15 So.3d 198, writs denied, 09-1305 (La. 02/05/10), 27 So.3d 297 and 12-2171 (La. 05/31/13), 118 So.3d 386. The *528 trial judge imposed the maximum twenty-year sentence upon defendant. Defendant’s sentence is within the applicable sentencing range considering his prior drug conviction.
Additionally, defendant was convicted of attempted simple escape in violation of La. R.S. 14:110 and La. R.S. 14:27. Defendant was sentenced to two and one-half years on the attempted escape conviction, which is within the applicable sentencing range. See State v. Gaines, 370 So.2d 571 (La.1979).
Defendant’s sentences are not unconstitutionally excessive. The trial judge considered the sentencing guidelines of La. C.Cr.P, art. 894.1, and provided extensive reasons for the sentences he imposed. Defendant targeted and took advantage of an elderly widow whom he used to live near as the victim of the armed robbery. L.L. testified that he took a gun from the car defendant was driving and saw defendant put a gun in his waistband before he went to Ms. Dealune’s door, L.L went to the front door and asked for help, and Ms. Dealune allowed him to enter because she was kindhearted. The evidence indicated that defendant orchestrated the armed robbery since he told L.L. not to kill Ms. Dealune, and L.L. complied, and since defendant kept the property he stole from Ms. Dealune, and the guns used in the armed robbery were found in his bedroom. Ms. Dealune testified during her impact statement the experience was very traumatic and she was still frightened that it could happen again. Additionally, defendant admitted he removed the handcuffs after he was arrested. The trial judge noted defendant had a previous criminal conviction from 2009 for cultivation of marijuana.
The Louisiana Supreme Court has recognized that the crime of armed robbery “creates a great risk of emotional and physical harm.” State v. Celestine, 12-241 (La. 07/02/12), 92 So.3d 335, 337 (per curiam). Further, this Court has recognized armed' robbery as a “serious offense against the person.” State v. Bruce, 10-121 (La.App. 5 Cir. 11/9/10), 54 So.3d 87, 97, writs denied, 10-2756 (La. 04/29/11), 62 So.3d 109 and 13-0413 (La. 07/31/13), 118 So.3d 1115. Considering the circumstances of the case, defendant’s influence over L.L., who initially entered Ms. Dealune’s home, defendant’s criminal history, the trial judge’s extensive reasons for sentencing, and the sentences in other cases, defendant’s sentences for armed robbery and felon in possession of a firearm are not unconstitutionally excessive. Additionally, considering the circumstances of defendant’s conviction for attempted simple escape, the trial judge did not abuse its discretion in imposing a two and one-half-year sentence for this offense.
Defendant argues the trial judge imposed severe sentences as a penalty for going to trial. Even if defendant had properly preserved this issue for appeal, defendant’s argument has no merit. When a defendant chooses not to accept the plea bargains and sentencing recommendations offered by the State, he takes the risk of a greater penalty upon a jury conviction. State v. Lee, 09-37 (La.App. 5 Cir. 05/12/09), 15 So.3d 229, 235. See also State v. Johnson, 11-375 (La.App. 5 Cir. 12/28/11), 83 So.3d 1116, writ denied, 12-0296 (La. 6/22/12), 91 So.3d 966.
The trial judge heard numerous witnesses testify at trial, and therefore, he was in a better position to consider all the testimony and evidence when he imposed defendant’s sentences. Additionally, the trial judge warned defendant at the time of the plea offer that he would impose consecutive sentences should defendant be convicted as charged. Considering the *529 foregoing, defendant’s sentences are not unconstitutionally excessive.
Error Patent Discussion
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). A review reveals an error patent that requires corrective action.
The commitment and the transcript appear to be inconsistent. The commitment provides as follows:
In addition to all general conditions of probation, the following special conditions of probation are imposed: The Defendant shall pay all court costs, fines, and fees with [sic] 180 days of this day. Failure to comply may result in a suspension of driving privileges, as well as a. civil money judgment. (Emphasis added.)
According to the transcript, the trial judge stated, in pertinent part:
I also impose fines, fees, and costs in this case. You’ve got 180 days to pay those fines, fees, and costs in full. If not paid in full within 60 days and no appeal is pending, a civil money judgment will be issued in any amount due and will-accrue judicial interest from signing until satisfied.
You’re ordered to surrender your driver’s license to the state. A certificate' to drive will be issued, if appropriate; if not paid in full within a hundred and eighty days, your driving privileges will be suspended, and they will not be reinstated until you pay those fines, fees, and costs.
The transcript does not reflect the trial judge stated he was imposing general or special conditions of probation. The trial judge did not place defendant on probation, and the record does not reflect that a
conditions of probation form was completed. If a discrepancy exists between the commitment and the transcript, the transcript-prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). We remand this matter and order the trial court to correct the commitment by removing the references to probation. We further order the Clerk of Court to transmit the corrected commitment to the official in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See State v. Lyons, 13-564 (La.App. 5 Cir. 01/31/14), 134 So.3d 36, 41, writ denied, 14-0481 (La. 11/07/14), 152 So.3d 170.
For the reasons stated above, we affirm defendant’s convictions and sentences and remand for correction of the commitment.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

. Defendant was also charged with resisting a police officer with force or violence in violation of La. R.S. 14:108.2 (count four). The jury found defendant not guilty. This charge was not appealed.

. L.L., who was a juvenile at the time of trial, testified as a witness for the State in this case, His initials are used to protect his identity. See State v. Winston, 02-1161 (La.App. 5 Cir. 03/25/03), 844 So.2d 184, 187 n. 1, writ denied, 03-1284 (La. 11/14/03), 858 So.2d 419; State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1040 n. 2, writs denied, 00-0150 (La. 06/30/00), 765 So.2d 1066 and 99-3477, 765 So.2d 1062.

. Ms. Dealune’s purse contained a cell phone, prescription eyeglasses, and a wallet containing insurance cards, a Capital One debit card, and a Capital One Visa credit card.

. Jamie Lombass testified that in October of 2014, she was the manager of Twin Peaks Restaurant in Gretna. She stated that on October 14, 2014, a detective showed her a photograph, which she positively identified as the defendant, a former employee. Ms. Lom-bass explained that she was assisted in her identification by the way defendant wore the shirt around his neck in the photograph. She further explained that whenever defendant would get off work, he would take off his Twin Peaks shirt and wrap it around his neck like the shirt in the photograph and at times he would put the shirt up against his mouth. The photograph Ms. Lombass was shown was the photograph of defendant taken at the Game Stop store, later identified by Ms. Deal-une and L.L.